OHIO GRAIN CO., APPELLANT, *v.* SWISSHELM, APPELLEE.

[Cite as Ohio Grain Co. v. Swisshelm
(1973), 40 Ohio App. 2d 203.]

(No. 819—Decided December 5, 1973.)

*Messrs. Grisby & Allen,* for appellant.
*Mr. Donald G. Schornak,* for appellee.

CRAWFORD, P. J. Plaintiff alleged that it purchased 1500 bushels of soybeans, at five dollars per bushel, to be picked up at defendant's farm; that defendant sold the beans to another and plaintiff was required to replace them in the market at $6.12 per bushel; that the cost of trucking and handling would have been twelve cents per bushel; that plaintiff has therefore suffered damage of one dollar per bushel, or a total of $1,500, for which a judgment was demanded. The case was tried to the court, who entered judgment for the defendant.

The court found that on February 9, 1973, a telephone conversation occurred between defendant and plaintiff's agent concerning the possibility of plaintiff's purchasing the beans from the defendant; that merely the price of five dollars per bushel was discussed, and plaintiff had never seen the beans; that a written confirmation of sale was sent to defendant by plaintiff, which was not signed or returned by the defendant; that defendant sold the beans to another after receiving the written confirmation of sale and before the time when plaintiff, according to its confirmation, called to arrange for delivery.

The court concluded that there was no meeting of the minds and no valid offer and acceptance and that plaintiff had failed to establish its case by a preponderance of the evidence.

There is some question about precisely what was said between plaintiff's agent and defendant in telephone conversations on February 9, 1973, regarding a sale of the beans for five dollars, and whether a contract of sale arose under the provisions of R. C. 1302.07. We pass that question for the moment in order to consider a principal contention of the plaintiff based upon R. C. 1302.10. That section is related, of course, to R. C. 1302.04, with regard to the need for a writing, to satisfy the statute of frauds.

R. C. 1302.10 reads, in pertinent part:

"(A). A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed

upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(B) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(1) the offer expressly limits acceptance to the terms. of the offer;

"(2) they materially alter it; or

"(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received. * * *"

Under date of February 9, 1973, the same day as the telephone conversations, the plaintiff sent and defendant duly received a "Grain Purchase Confirmation" signed by plaintiff's agent, affirming the purchase by plaintiff from defendant "of 1500 bushels of Soybeans at $5.00 per bushel, to be delivered to *at the farm loaded in our truck*, Ohio, basis No. * * *."

Then, followed provisions signifying 54 lb. test weight, 13 per cent moisture, 2 per cent damage, and 1 per cent foreign material and "Grain delivered grading lower than this grade will be discounted at prevailing discount schedules." After the signature by plaintiff's agent, the confirmation concluded with a blank for the signature of the seller and the words:

"Delivery date: by Feb. 20, 1973 Settlement date: Upon del.

"Please sign and return attached copy promptly to The Ohio Grain Company. Keep original for your records.

"It is understood that the retention of this confirmation by Seller, without immediately notifying Buyer of error therein, is an acknowledgement and acceptance of a contract exactly as stated above."

It is the argument of the plaintiff that, a contract of sale having been entered into, the confirmation added only the usual and necessary specifications, which were added to the contract and became binding upon the defendant when he failed to give notification of objection to them within a reasonable time.

Defendant argues that any agreement that may have been made was for a price of $5 and that the confirmation differed from that figure, and proposed an entirely new arrangement. His counsel argues further that R. C. 1302.10 applies to dealings between merchants, and that according to R. C. 1302.01:

"(7) 'Between merchants' means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

He would represent defendant as a simple tiller of the soil, unaccustomed to the affairs of business and the marketplace. Farming is no longer confined to simple labor. Only an agribusinessman may hope to survive. This defendant was clearly familiar with farm markets and their operation and followed them with some care. For example, he was familiar with the bean market in Cincinnati, as well as that in his local community. In his many years of farming, he knew that corn was sold for varying prices, depending upon its moisture, quality and condition, and admitted having some idea that the same was true of beans. He had sold some beans a number of years before.

He claims to be a livestock farmer rather than a grain farmer. The price obtained in the livestock market also varies with the quality and condition of the animal. It is inconceivable that he would not know that it is the exceptional produce or livestock which brings the top market price and that neither is to be accepted at top price without examination and analysis.

Hence, it was necessary to specify that the proposed price of $5 should apply to certain standards which needed, in all fairness to both parties, to be carefully defined. That is what plaintiff's confirmation did. If these specifications were not acceptable to the defendant, it was his duty, and he had the opportunity within a reasonable time, to reject them. When he failed to do so, they became binding upon him.

We return then to the question of whether or not, in the telephone conversations of February 9, 1973, there was a meeting of the minds or mutual assent. Plaintiff's agent's

testimony was positive that there was. Defendant's testimony is a little less precise, but it nevertheless clearly appears that defendant offered to sell for $5 in immediate cash, that is, upon delivery, and that plaintiff accepted his offer.

Defendant's brief does not challenge this. In fact, his counsel affirms it throughout his brief. His argument is, not that there was no agreement but that there was an agreement to sell the beans for $5 in cash. He contends that the confirmation "changed the sum substantially," and states: "The confirmation actually amounts to a counter-offer."

Plaintiff's assignments of error: (1) entering judgment for the defendant despite the fact that the written confirmation received and not disputed established as a matter of law that there was a binding contract between the parties; and (2) finding that there was no contract; have been adequately supported.

Plaintiff claims that in reliance upon the contract, it committed itself to sell the beans and was compelled upon defendant's default to procure others in the market at an increased price. Plaintiff logically asserts that the contract would have been enforceable against it if the market had gone down instead of up. Both parties to a contract must be bound or neither is bound.

We find the contract valid and the assignments of error well made.

The judgment for the defendant will be reversed, judgment entered for the plaintiff, and the cause remanded to the Court of Common Pleas for an assessment of damages.

*Judgment reversed.*

KERNS and SHERER, JJ., concur.