**COLORADO–KANSAS GRAIN COMPANY, Plaintiff–Appellee,**

v.

**Albert REIFSCHNEIDER, Defendant–Appellant.**

**No. 89CA1297.**

Colorado Court of Appeals, Div. IV.

Aug. 29, 1991.

Johnson & McLachlan, George McLachlan, Lamar, for plaintiff-appellee.

Lefferdink & Bullock, John S. Lefferdink, Lamar, for defendant-appellant.

Opinion by Judge JONES.

In this contract case, defendant, Albert Reifschneider, appeals a judgment in favor of plaintiff, Colorado–Kansas Grain Company. We affirm.

The facts, in part as found by the trial court, are as follows: Plaintiff is a merchandiser of agricultural commodities with its principal place of business in Lamar, Prowers County, Colorado. Defendant was raised on a farm and has been a farmer since 1957. Defendant's farming operations in 1988 were conducted on 160 acres of land owned by him and irrigated under the Fort Lyon Canal Company, 280 acres of leased land irrigated under the Fort Lyon Canal Company, and a farm near Carleton, Colorado, leased from the First National Bank of Lamar, consisting of approximately 630 acres irrigated under the Amity Canal. The crops raised on these farms were hay, wheat, milo, and corn.

On or about April 7, 1988, defendant met with Tony Hall, an agent of plaintiff, and Bill Broyles, president of the plaintiff company, and discussed buying corn from defendant. Negotiations resulted in an agreement that plaintiff would buy 12,500 bushels of corn at a market price of $2.25 per bushel, but defendant advised Hall that the First National Bank owned one-third of any corn crop and that defendant would have to get its consent to sell the corn.

Thereafter, defendant contacted Dave Reyher, a loan officer with the bank, who advised him that the arrangement was acceptable to him. Later in a telephone conversation with Hall, the parties agreed that plaintiff would buy and defendant would sell 12,500 bushels of corn at an agreed price of $2.25 per bushel to be delivered to one of plaintiff's storage elevators near Carleton, Colorado. Defendant advised Hall to prepare a written contract reflecting this agreement. Delivery of the corn was to be made as harvested in October 1988.

Shortly after April 7, 1988, plaintiff's employees prepared a written confirmation of the oral agreement and mailed it to defendant with instructions to sign it and to return the original to plaintiff. After consideration of the confirmation, and conversations with plaintiff's representatives, defendant orally informed plaintiff, in late June 1988, that he would not sign the confirmation and that he felt that no contract existed between the parties.

In July 1988, plaintiff made written demand on defendant to deliver the corn when it was harvested that fall and advised him that his failure to do so would result in plaintiff seeking damages for defendant's "wrongful repudiation of the agreement." In August 1988, defendant's attorney responded in writing to plaintiff that no contract existed.

Aware of the persistence of defendant's refusal, plaintiff bought 12,500 bushels of corn from third parties at a cost of $8,425 in excess of the originally agreed price. In the meantime, defendant did not deliver his corn to plaintiff but sold it elsewhere.

Plaintiff brought an action against defendant alleging wrongful repudiation and breach of contract and requested specific performance and injunctive relief. After a trial to the court, judgment was entered for plaintiff, based, in part, on the trial court's conclusion that defendant was a "merchant" within the meaning of the Uniform Commercial Code (UCC), § 4–2–101, et seq., C.R.S. This appeal followed.

## I.

Defendant first contends that the trial court erred in its determination that an oral agreement was entered into between the parties. We disagree.

Whether a contract exists between the parties is a question to be determined by the trier of fact. *Colo–Tex Leasing, Inc. v. Neitzert*, 746 P.2d 972 (Colo.App. 1987).

Here, the record reveals ample evidence in support of the trial court's finding

that an oral agreement was entered between the parties. Hence, that finding is binding on appeal. *See People in re Petition of K.M.K.*, 780 P.2d 43 (Colo.App. 1989).

## II.

Defendant next contends that the trial court erred in its conclusion that he was a merchant under the UCC. He argues that, for purposes of contract formation regarding the statute of frauds, he is not a merchant and that, therefore, any contract between him and plaintiff cannot be enforced because it was not in writing. We perceive no error.

Concerning the formation and enforceability of a contract, Article 2 of the UCC, relating to sales, states at § 4-2-201(1), C.R.S., in relevant part, as follows:

"[A] contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought...."

However, the UCC provides that sales transactions between merchants are to be gauged by different rules than those transactions not involving two or more merchants. Section 4-2-201(2), C.R.S., points out that:

"Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within ten days after it is received."

■ Here, a written confirmation from plaintiff of the oral agreement was timely received by defendant. We conclude that, as between merchants, the form and content of the confirmation are sufficient such as to take the oral agreement outside of the statute of frauds. *Cf. Nations Enter-*

*prises, Inc. v. Process Equipment Co.*, 40 Colo.App. 390, 579 P.2d 655 (1978).

■ However, defendant contends that he is not, and was not, a "merchant" for purposes of the sales transaction with plaintiff and that, therefore, the statute of frauds must apply.

The question of whether a farmer is or can be a merchant for purposes of this UCC provision has not been addressed in Colorado. Upon a consideration of the UCC and case law from those states which have addressed the issue, we now hold that, for purposes of § 4-2-201(2), C.R.S., a farmer may be a merchant. We hold, further, that defendant was a merchant as to the sales transaction involved here and that, therefore, the statute of frauds does not apply to the contract between him and plaintiff.

### A.

As the term applies here, a "merchant" is defined in § 4-2-104(1), C.R.S., as:

"a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...."

*See Cement Asbestos Products Co. v. Hartford Accident & Indemnity Co.*, 592 F.2d 1144 (10th Cir.1979) (applying Colorado law).

Thus, a transaction "between merchants" is one "with respect to which both parties are chargeable with the knowledge or skill of merchants." Section 4-2-104(3), C.R.S. We conclude that the transaction here between a long-time farmer and a merchandiser of agricultural commodities for the sale of corn upon harvest was one between merchants. *See Cargill, Inc. v. Stafford*, 553 F.2d 1222 (10th Cir.1977).

The courts among those states which have dealt with this issue are almost evenly split on whether a farmer can be a merchant. Each of those states has statutory law identical to § 4-2-201(2).

In Indiana, Michigan, Missouri, Nebraska, Ohio, Illinois, and Texas the courts have determined that farmers may be mer-

chants. *See Sebasty v. Perschke,* 404 N.E.2d 1200 (Ind.App.1980); *Barron v. Edwards,* 45 Mich.App. 210, 206 N.W.2d 508 (1973); *Rush Johnson Farms, Inc. v. Mo. Farmers Ass'n,* 555 S.W.2d 61 (Mo.App. 1977); *Agrex, Inc. v. Schrant,* 221 Neb. 604, 379 N.W.2d 751 (1986); *Ohio Grain Co. v. Swisshelm,* 40 Ohio App.2d 203, 69 Ohio Op.2d 192, 318 N.E.2d 428 (1973); *Sierens v. Clausen,* 60 Ill.2d 585, 328 N.E.2d 559 (1975); *Chisolm v. Cleveland,* 741 S.W.2d 619 (Tex.App.1987).

The courts of Alabama, Arkansas, Iowa, Kansas, South Dakota, and Utah have held that farmers were not contemplated by the drafters of the UCC as includable as merchants. *See Loeb & Co. v. Schreiner,* 294 Ala. 722, 321 So.2d 199 (1975); *Cook Grains, Inc. v. Fallis,* 239 Ark. 962, 395 S.W.2d 555 (1965); *Sand Seed Service, Inc. v. Poeckes,* 249 N.W.2d 663 (Iowa 1977); *Decatur Cooperative Ass'n v. Urban,* 219 Kan. 171, 547 P.2d 323 (1976); *Terminal Grain Corp. v. Freeman,* 270 N.W.2d 806 (S.D.1978); *Lish v. Compton,* 547 P.2d 223 (Utah 1976).

In considering the question at issue, we note that the cases which hold that farmers may be merchants reflect on the fact that today's farmer is involved in far more than simply planting and harvesting crops. Indeed, many farmers possess an extensive knowledge and sophistication regarding the purchase and sale of crops on the various agricultural markets. Often, they are more aptly described as agri-businessmen. *See Sebasty v. Perschke, supra.*

Thus, we conclude that, for purposes of § 4–2–201(2), C.R.S., a farmer may be a merchant.

### B.

Still remaining, however, is the question of whether defendant was a merchant. The status of a farmer as a merchant is typically a question for the trier of fact, and the issue becomes one of law only if reasonable minds could not draw different conclusions from the facts. *Sand Seed Service, Inc. v. Poeckes, supra.*

In reaching its determination, a trier of fact should consider the following as well as any other relevant factors: (1) the length of time the farmer has been engaged in the practice of selling his product to the marketers of his product, *Campbell v. Yokel,* 20 Ill.App.3d 702, 313 N.E.2d 628 (1974); (2) the degree of business acumen shown by the farmer in his dealings with other parties, *Sierens v. Clausen, supra;* (3) the farmer's awareness of the operation and existence of farm markets, *Ohio Grain Co. v. Swisshelm, supra;* and (4) the farmer's past experience with or knowledge of the customs and practices which are unique to the particular marketing of the product which he sells, *Currituck Grain, Inc. v. Powell,* 28 N.C.App. 563, 222 S.E.2d 1 (1976). *See* Squillante, *Is He or Isn't He a Merchant?—The Farmer,* 82 Com.L.J. 430 (1977) (Part 3).

Here, the record reflects that defendant had dealt in corn or other agricultural commodities for at least twenty years. Moreover, defendant had served as president of a corporation involved in the purchase and sale of hay under futures contracts. And, defendant also had sold his own hay crops to third parties under futures contracts.

A farmer who regularly sells his crops is a person who deals in goods of that kind. *Continental Grain Co. v. Harbach,* 400 F.Supp. 695 (N.D.Ill.1975); *Rush Johnson Farms, Inc. v. Missouri Farmers Ass'n, supra.*

Here, defendant's twenty years of experience in selling corn establishes that he is a "person who deals in goods of the kind." Moreover, defendant's extensive experience in selling corn, when coupled with his familiarity with futures contracts, supports the trial court's determination that he "by his occupation [held] himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." *See* § 4–2–104(1), C.R.S.

Furthermore, given defendant's level of experience and sophistication in the selling of corn and in futures contracts generally, we are unpersuaded that his lack of experience in corn futures precludes the determination of his status as a merchant. *Conti-*

*nental Grain Co. v. Harbach, supra* (where farmer concededly was merchant as to corn, lack of extensive experience in also growing and selling soybeans did not preclude finding that he was a merchant in soybeans, since both are grains and may be considered "goods of the same kind").

Thus, we conclude that under the circumstances of this case, the trial court did not err in concluding that defendant was a merchant.

Accordingly, because the contract at issue here was between merchants and because defendant received a written confirmation and failed to object in writing within ten days of such receipt, a contract was formed under § 4-2-201(2), C.R.S.

We have considered defendant's other contentions and find them to be without merit.

The judgment is affirmed.

METZGER and MARQUEZ, JJ., concur.