# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### MARCH 21, 2012 Session

## BROOKS COTTON COMPANY, INC. v. BRADLEY F. WILLIAMS

**Direct Appeal from the Chancery Court for Crockett County**
**No. 9423     George R. Ellis, Chancellor**

---

**No. W2011-01415-COA-R9-CV - Filed April 23, 2012**

---

This interlocutory appeal concerns the question of whether a farmer may be considered a merchant for purposes of the Uniform Commercial Code Statute of Frauds. Appellant farmer allegedly entered into an oral contract to sell his cotton crop to Appellee cotton company. The farmer failed to deliver the cotton and the cotton company sued for specific performance. The farmer defended the suit by arguing that the alleged oral contract was unenforceable due to the Statute of Frauds. The cotton company countered that the farmer was a merchant for purposes of the merchant exception to the Statute of Frauds. The trial court granted partial summary judgment in favor of the cotton company, finding that the farmer was a merchant for purposes of the Statute of Frauds. We hold that a farmer may be considered a merchant for purposes of the Uniform Commercial Code Statute of Frauds, the determination of which is a mixed question of law and fact. However, because the question of whether this particular farmer qualifies as a merchant raises genuine issues regarding the inferences to be drawn from the facts, we reverse the grant of partial summary judgment and remand to the trial court for a trial on the merits.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Oscar C. Carr, III, Don L. Hearn, Jr., and Patrick T. Burnett, Memphis, Tennessee, for the appellant, Bradley F. Williams.

C. Barry Ward and Richard S. Townley, Memphis, Tennessee, for the appellee, Brooks Cotton Company, Inc.

## OPINION

# I. Background

Defendant/Appellant Bradley F. Williams is a cotton and soybean farmer with a high school education. According to Plaintiff/Appellee Brooks Cotton Company, Inc. ("Brooks Cotton"), on or about August 5, 2010, Mr. Williams entered into a oral contract to sell his 2010 cotton production to Brooks Cotton. The alleged contract was recorded in the Brooks Cotton purchase book on August 6, 2010 and provided that Mr. Williams would sell his entire 1000 acre cotton production to Brooks Cotton. The price allegedly agreed upon was $0.20 per pound over the guaranteed government loan amount of $0.542 per pound, totaling $0.742 per pound of cotton.[1] At the time of the alleged agreement, Mr. Williams had not yet harvested his cotton.[2] According to the record, Mr. Williams ultimately produced approximately 1206 bales of cotton in 2010. If the contract had been performed as allegedly agreed, the total contract price for Mr. Williams' cotton would have been approximately $446,000.00. Brooks Cotton sent written confirmation of the alleged agreement to Mr. Williams on or about September 4, 2010, nearly thirty days after the contract was allegedly agreed to on the phone. Mr. Williams asserts that he never entered into an oral contract with Brooks Cotton, although he did not call or write Brooks Cotton to object to the written terms sent to him.

Mr. Williams did not deliver all of his 2010 cotton production to Brooks Cotton. On October 30, 2010, Mr. Williams partially performed on the alleged oral contract, delivering 307 bales of the estimated 1206 bales of cotton produced by his farm in 2010. Mr. Williams refused to deliver the remaining cotton, asserting that there was not a valid contract between Mr. Williams and Brooks Cotton.

On or about November 18, 2010, Brooks Cotton filed a Complaint for Specific Performance, Injunctive Relief, and Damages against Mr. Williams. An injunction hearing was held on November 30, 2010. Mr. Williams testified at the hearing regarding his experience and skills in marketing cotton, stating that he had been a cotton farmer for approximately twenty-five years. Mr. Williams testified that, in the majority of the years prior to 2010, he had entered into a contract with Brooks Cotton to sell his cotton crop. In most of those years, however, Mr. Williams agreed to the contract in person at Brooks Cotton's office

---

[1] According to Mr. Williams' testimony, the $0.542 amount represents a Commodity Credit Corporation loan. The Commodity Credit Corporation is an entity of the federal government. The amount was to be repaid to the government after the harvest of the crop and the sale of the cotton.

[2] This type of contract, wherein the farmer agrees to sell his crops prior to the harvest, is referred to as a "forward crop contract."

after the cotton had been harvested, rather than over the telephone prior to the harvest. Mr. Williams did testify that he was familiar with the practice of "booking" cotton over the phone, as he had previously "booked" his cotton with Brooks Cotton in 2003. Mr. Williams testified, however, that he did not "book" his cotton with Brooks Cotton in August 2010, but that he merely called to discuss cotton prices. In addition, Mr. Williams explained his process for determining the price at which he will sell his cotton, wherein he reviews the selling price of his cotton crop in the previous three years. Although Mr. Williams testified that he receives daily texts regarding the price of cotton, he explained that he was not familiar with the common practice of "hedging"[3] engaged in by many cotton merchants. David Brooks of Brooks Cotton explained that hedging is a common practice in the cotton trade. In addition, Mr. Williams testified that he never uses his potential cotton crop as collateral on loans to finance the cotton crop, instead relying on various equipment and land. Mr. Williams went on to testify that he owed approximately $400,000.00 to the bank in loans, but that he had approximately $40,000.00 in bank accounts due to his off-season construction work. Based on the testimony, the court issued a preliminary injunction on the sale of Mr. Williams' 2010 production of cotton.

Several motions were subsequently filed in the trial court that are not the subject of this appeal.[4] Importantly, Mr. Williams filed a motion for summary judgment on December 21, 2010, asserting, *inter alia*, that he was not a merchant under Tennessee's version of the Uniform Commercial Code ("U.C.C."); therefore, the merchant exception to the Statute of Frauds did not apply and there was no valid contract between himself and Brooks Cotton. In the alternative, Mr. Williams argued that, if he was considered a merchant for purposes of the U.C.C., no valid contract existed because the written memorialization was not sent to him within a reasonable time.

Brooks Cotton filed a response in opposition on February 24, 2011, arguing that Tennessee did not provide an exception that prevented farmers such as Mr. Williams from being considered merchants under the U.C.C., and that the statutory definition of a "merchant" pursuant to Tennessee Code Annotated Section 47-2-104 was broad enough to

---

[3] "Hedging" refers to a practice by merchants, wherein the merchant protects his financial interests by "offsetting his purchases with a sale of futures contracts on the cotton exchange." *Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 26–27 (1974). According to the U.S. Supreme Court, hedging "drastically reduces the risk to both merchants and lenders." *Id.* at 27.

[4] These motions include a motion to dismiss filed by Mr. Williams, a motion to increase the cash bond established pursuant to the temporary injunction, a motion to require Mr. Williams to pay proceeds of some of the cotton that was accidently burned into the court, and a motion that the cotton that is the subject of the action be sold and its proceeds be deposited with the court.

encompass Mr. Williams.

Mr. Williams filed an answer to the complaint on February 16, 2011, denying the material allegations contained therein.

On March 7, 2011, Brooks Cotton filed a cross-motion for partial summary judgment, arguing that Mr. Williams should be considered a merchant for purposes of the merchant exception to the Statute of Frauds and that the notice to Mr. Williams was sent within a reasonable time. To support the motion, Brooks Cotton supplemented the record with the depositions of several area farmers, many of whom testified that the practice of orally booking cotton was common in the trade. Many of the farmers, however, testified that they were familiar with the practice of hedging, and that they had engaged in hedging themselves. Brooks Cotton also submitted Mr. Williams' deposition, wherein he testified that he receives several monthly farming periodicals, such as *Cotton Grower* and *Tennessee Farmer*.

The trial court heard oral argument on the cross-motions on April 19, 2011. The trial court orally ruled that Mr. Williams was a merchant under the U.C.C. and granted partial summary judgment in favor of Brooks Cotton on that limited issue (the trial court did not determine whether Mr. Williams ever entered into an agreement with Brooks Cotton or whether the memorialization of the alleged contract was made within a reasonable time). The trial court also orally granted Mr. Williams' motion for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Accordingly, the trial court denied Mr. Williams' motion for summary judgment.

On May 9, 2011, the trial court entered its ruling denying Mr. Williams' motion for summary judgment and granting partial summary judgment to Brooks Cotton. The order granting the motion stated:

> The Court is persuaded that a transaction between merchants is one with respect to which both parties are charged with the knowledge or skill of merchants. The Court concludes that the transaction here between a long-time farmer and a long-time buyer for the sale of cotton is one between merchants. In considering the questions at issue, the Court notes that cases which hold that the farmer is [a] merchant[s] [sic] reflect on the fact that today's farmers are involved in far more than simply planting and harvesting crops. Based on the depositions [of various area farmers not involved in this litigation regarding the knowledge and skill of farmers with regard to the sale of crops] . . . the Court is persuaded that Bradley Williams and today's

> Tennessee farmer possess an extensive knowledge and
> sophistication regarding the purchase and sale of crops.

On May 19, 2011, Mr. Williams filed a written Motion for Permission to File Interlocutory Appeal, which the trial court granted on June 23, 2011. This Court granted Mr. Williams' Application for Permission to File Interlocutory Appeal on September 7, 2011 on a single issue, which is taken from Mr. Williams' brief:

> Whether the trial court erred in denying Mr. Williams' motion
> for summary judgment and granting Brooks Cotton's motion for
> partial summary judgment by finding that Mr. Williams was a
> merchant as a matter of law under the merchant exception to the
> Uniform Commercial Code Statute of Frauds?[5]

## II. Standard of Review

Because this case was adjudicated by summary judgment, we first note that a trial court's decision on a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." *Mathews Partners, L.L.C. v. Lemme*, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the

---

[5] Often this Court has been called upon to review appellate records that contain multiple copies of the same documents or filings in the trial court that are specifically excluded from the appellate record by Rule 24(a) of the Tennessee Rules of Appellate Procedure. In those cases, we have chastised the attorneys for failing to follow the rules of this Court. In this case, however, we must commend the attorneys and the Crockett County Chancery Court Clerk for having done a thorough job of creating an appellate record with neither irrelevant nor repetitive filings.

moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24–25.

### III. Analysis

The central issue presented in this interlocutory appeal is whether a farmer, such as Mr. Williams, may be considered a merchant under the U.C.C.. In this case, Mr. Williams' designation as a merchant is critical to the outcome of the lawsuit. If Mr. Williams is considered a merchant, then the merchant exception to the Statute of Frauds applies and the case can proceed; if Mr. Williams cannot be considered a merchant, regardless of whether he entered into an oral contract with Brooks Cotton, an oral contract will not be sufficient to bind him.

Generally contracts need not be in writing to be enforceable, unless they are of the kind that the Statute of Frauds or other law requires to be written. *See Castelli v. Lien*, 910 S.W.2d 420, 426 (Tenn. Ct. App. 1995). One type of contract that must be in writing is a contract for the sale of goods priced over $500.00:

> Except as otherwise provided in this section, a contract for sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing or record sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing or record is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing or record.

Tenn. Code Ann. §47-2-201(a). It is undisputed that the alleged contract for the sale of Mr. Williams' 2010 cotton production far exceeded $500.00. Accordingly, unless an exception applies, the Statute of Frauds requires that the contract be in writing to be enforceable. However, the U.C.C. provides an exception to this rule in situations where both parties are merchants:

> Between merchants if within a reasonable time a writing or record in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

Tenn. Code Ann. §47-2-201(b). Accordingly, for Mr. Williams to be bound by any oral contract, this Court must first determine whether he is a "merchant" for purposes of the U.C.C. Statute of Frauds. The question of what is required to be considered a merchant for

purposes of the Statute of Frauds is a question of first impression in this State. To resolve this issue, we must interpret the meaning of the word "merchant" in Tennessee Code Annotated Section 47-2-201(b). The Tennessee Supreme Court recently outlined the applicable principles when faced with a question of statutory interpretation:

> When dealing with statutory interpretation, well-defined precepts apply. ***Colonial Pipeline Co. v. Morgan***, 263 S.W.3d 827, 836 (Tenn. 2008). Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. ***Houghton v. Aramark Educ. Res., Inc.***, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. ***In re C.K.G.***, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. ***Eastman Chem. Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. ***Abels ex rel. Hunt v. Genie Indus., Inc.***, 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. ***Colonial Pipeline***, 263 S.W.3d at 836. Courts must presume that a legislative body was aware of its prior enactments and knew the state of the law at the time it passed the legislation. ***Owens v. State***, 908 S.W.2d 923, 926 (Tenn. 1995).

***Estate of French v. Stratford House***, 333 S.W.3d 546, 554 (Tenn. 2011). Accordingly, we will first consider the plain language of the statute. The term "merchant" is defined by Tennessee law:

> "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Tenn. Code Ann. §47-2-104(1). Accordingly, a contract "'[b]etween merchants' means [] any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." *Id.* at -104(3). The comments to this section elaborate on who is considered a merchant for purposes of the Statute of Frauds:

> The term "merchant" as defined here roots in the "law merchant" concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provisions.
>
> The special provisions as to merchants appear only in this Article and they are of three kinds. Sections 2-201(2), 2-205, 2-207 and 2-209 dealing with the statute of frauds, firm offers, confirmatory memoranda and modification rest on normal business practices which are or ought to be typical of and familiar to any person in business. **For purposes of these sections almost every person in business would, therefore, be deemed to be a "merchant" under the language "who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction . . ." since the practices involved in the transaction are non-specialized business practices such as answering mail.** In this type of provision, banks or even universities, for example, well may be "merchants." But even these sections only apply to a merchant in his mercantile capacity; a lawyer or bank president buying fishing tackle for his own use is not a merchant.

Tenn. Code Ann. §47-2-104, cmt. 2 (emphasis added). As such, the definition of merchant for purposes of the Statute of Frauds encompasses "almost every person in business." *Id.*

From the above statute, it is clear that the framers of the U.C.C. intended the term merchant to encompass three distinct classes. Accordingly, for an individual to be considered a merchant he or she must either be:

    1.      A person who deals in goods of the kind;
    2.      A person who by his occupation holds himself out as

having knowledge or skill peculiar to the practices or goods involved in the transaction; or

3.  A person who employs an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

*See* Tenn. Code Ann. §47-2-104(1). Indeed, many other states have adopted this definition of "merchant" based on the plain language of the statute. *See e.g.,* **Loe & Co., Inc. v. Schreiner**, 321 So. 2d 199 (Ala. 1975). While this definition is instructive, it does not end the inquiry into whether a farmer is one who "deals in goods" or who "by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Accordingly, we must look beyond the plain language of the statute in order to determine whether a farmer is a merchant under the U.C.C Statute of Frauds.

Mr. Williams argues that the law in Tennessee evidences a public policy against holding that a farmer can be a merchant, as a matter of law. Mr. Williams points to a provision in the Cotton Arbitration Act, Tennessee Code Annotated Section 29-5-201 through -222. The provision provides that a written agreement to submit any matter concerning the cotton industry to arbitration, other than a forward crop contract, is enforceable and irrevocable, unless otherwise prohibited by law. Tenn. Code Ann. §29-5-202(a). The Act states, however, that "[t]he provisions of this part shall not apply to any controversy within or related to the cotton industry if any party involved in such controversy is a cotton farmer or cotton ginner." *Id.* at 202(c). Based on this provision, Mr. Williams argues that Tennessee law evidences a policy against holding farmers to the same exacting contractual requirements as merchants. We do not agree. The provisions of the Cotton Arbitration Act cited by Mr. Williams apply in a specific situation that is not present in this case. First, the provision applies to agreements to waive one's right to a trial and to submit to arbitration outside of court. Accordingly the provision involves the waiver of a "consequential fundamental constitutional right: the right of access to the courts," and not simply a contract for the sale of goods. **Poole v. Union Planters Bank, N.A.**, 337 S.W.3d 771, 781 (Tenn. Ct. App. 2010). Second, the provision applies only if there is a written contract between the parties; as previously discussed, there is no written contract between the parties in this case. Third, the provision does not apply to a forward crop contract; the alleged contract between Mr. Williams and Brooks Cotton is a forward crop contract. Accordingly, the provisions of the Cotton Arbitration Act are not appropriately considered in this case.

We next turn to persuasive authority from outside our jurisdiction to inform our decision in this case. According to *Williston on Contracts,* the question of whether a farmer can be a merchant for purposes of the Statute of Frauds has led to different applications among the states. First, courts have differing views as to whether the determination of who

is a merchant is considered a factual question or a question of law:

> The majority of courts maintain that the question whether one is a merchant in a particular case, and for purposes of being bound by a confirmatory writing, is one of fact, although there are cases holding or suggesting that whether an entity can qualify as a merchant is a question of law for the courts to decide by applying the U.C.C. definition of merchant to the facts of the particular case, and it has been said that the question presents a mixed question of law and fact that whether there are circumstances in existence that would make one a merchant is a question of fact, but that once those facts are determined, whether they make a person a merchant is a question of law.

10 *Williston on Contracts* § 29:25 (4th ed.) (footnotes omitted). In addition, the question of whether a farmer is a merchant for purposes of the Statute of Frauds constitutes one of the more difficult and controversial issues with regard to the U.C.C. and, as such, has led to considerable disagreement among the states:

> Part of the difficulty with assessing the question of whether merchant status presents a question of law, one of fact or a mixed question of law and fact, involves the varied settings in which the question arises, since there are many provisions of the U.C.C., and not just the merchants' exception, that apply only or differently when one or both of the parties is a merchant.
>
> This may be seen in a review of perhaps the most controversial issue with respect to the application of the merchants' exception, whether farmers are to be considered merchants for purposes of the exception, with the courts split nearly evenly on the question, with a slight majority adopting the rule that a farmer can be a merchant, at least under some circumstances.
>
> A significant minority maintains that farmers are not merchants either based on the facts of the particular case or as a matter of law.
>
> The courts have indicated that the factors to be considered in making the determination whether a farmer is a merchant include the length of time the farmer has been engaged in the practice of selling the product raised or produced

-11-

to marketers; the degree of business acumen shown by the farmer in dealing with other parties; the farmer's awareness of the operation and existence of farm markets; and the farmer's past experience with or knowledge concerning the customs and practices that are unique to the marketing of the product being raised or produced and sold.

*Id.* (footnotes omitted). Indeed, American Jurisprudence contains an entire section devoted to the question of whether a farmer is a merchant under the U.C.C. Statute of Frauds, stating:

Courts have held that a farmer is a "merchant" for the purposes of . . . the statute of frauds.

In some cases, it has been noted that the duty imposed upon the farmer as a merchant is based on the principle that a farmer is only required to have nonspecialized business knowledge to be considered a merchant. On the other hand, it has been noted that the term "merchant" as defined in Uniform Commercial Code § 2-104(1) has its roots in the law merchant concept of a professional in business, suggesting that a farmer does not solely by virtue of his or her occupation hold himself or herself out as being a professional merchant.

67 Am. Jur. 2d *Sales* § 70 (footnotes omitted). Because there is no clear weight of authority regarding this issue, we find it instructive to consider cases from our sister states.

Mr. Williams cites various cases that have applied the above rule and found that a farmer cannot be considered a merchant for purposes of the Statute of Frauds. For example in *Loeb & Co., Inc. v. Schreiner*, 321 So. 2d 199 (Ala. 1975), the Alabama Supreme Court stated:

We hold that in the instant case the appellee was not a "merchant" within the meaning of [the merchant exception to the Statute of Frauds]. We do not think the framers of the Uniform Commercial Code contemplated that a farmer should be included among those considered to be "merchants."

\* \* \*

It is not sufficient . . . that one hold himself out as having

-12-

knowledge or skill peculiar to the practices or goods involved, he must [b]y his occupation so hold himself out. Accordingly, a person cannot be considered a 'merchant' simply because he is a braggart or has a high opinion of his knowledge in a particular area. We conclude that a farmer does not solely [b]y his occupation hold himself out as being a professional cotton merchant.

The remaining thing which a farmer might do to be considered a merchant is to become a dealer in goods. Although there was evidence which indicated that the appellee here had a good deal of knowledge, this is not the test. There is not one shred of evidence that appellee ever sold anyone's cotton but his own. He was nothing more than an astute farmer selling his own product. We do not think this was sufficient to make him a dealer in goods.

\* \* \*

Although a farmer might sell his cotton every year, we do not think that this should take him out of the category of a "casual seller" and place him in the category with "professionals."

*Id.* at 201–02.

The reasoning espoused in *Loeb* was followed in an number of jurisdictions. *See, e.g., Pierson v. Arnst*, 534 F.Supp. 360, 362 (D. Mont. 1982); *Cook Grains, Inc. v. Fallis*, 395 S.W.2d 555, 555 (Ark. 1965); *Sand Seed Service, Inc. v. Poeckes*, 249 N.W.2d 663, 666 (Iowa 1977); *Decatur Cooperative Association v. Urban*, 547 P.2d 323, 328 (Kan. 1976); *Terminal Grain Corp. v. Freeman*, 270 N.W.2d 806 (S.D. 1978); *Lish v. Compton*, 547 P.2d 223 (Utah 1976); *Gerner v. Vasby*, 250 N.W.2d 319, 670–71 (Wis. 1977). These courts reasoned that the framers did not contemplate including farmers as merchants because "the term 'merchant,' as used in the Uniform Commercial Code, contemplates special knowledge and skill associated with the . . . operation of the commodities market," rather than skill and knowledge with the practice of farming. *Pierson*, 534 F.Supp. at 362 ("It is inconceivable that the drafters of the Uniform Commercial Code intended to place the average farmer, who merely grows his yearly crop and sells it to the local elevator, etc., on equal footing with the professional commodities dealer whose sole business is the buying and selling of farm commodities."); *see also Sand Seed Service*, 249 N.W.2d at 666 (noting that a farmer selling only his annual production "may make him an expert or professional in Growing crops, it

does not do so in Selling them."); *Decatur*, 547 P.2d at 328 ("Appellee as a farmer undoubtedly had special knowledge or skill in raising wheat but we do not think this factor, coupled with annual sales of a wheat crop and purchases of seed wheat, qualified him as a merchant in that field."). The South Dakota Supreme Court clearly expressed this rationale, stating:

> Through training and years of experience a farmer may well possess or acquire special knowledge, skills, and expertise in the production of grain crops but this does not make him a "professional," equal in the marketplace with a grain buying and selling company, whose officers, agents, and employees are constantly conversant with the daily fluctuations in the commodity market, the many factors affecting the market, and with its intricate practices and procedures.

*Terminal Grain*, 270 N.W.2d at 812. Other courts agreed with the result in *Loeb*, but based their decisions on other rationales. For example, some courts noted the lack of evidence establishing that the particular farmer dealt in goods or had any special knowledge regarding the sale of those goods, and instead relied on the traditional definition of the farming occupation. *See Cook Grains*, 395 S.W.2d at 555 (defining a farmer as "one devoted to the tillage of the soil"). Other courts focused on the amount of time the farmer actually spent engaged in the business of selling crops in relation to the time the farmer spent growing crops, noting that the term merchant "refers primarily to one whose occupation is that of buying and selling." *Lish v*, 547 P.2d at 226 (framing the issue of whether a particular farmer is a merchant as a question of whether the practice of selling the crops "is done with such regularity that it forms at least a substantial part of his occupation").

However, many of the courts cited by Mr. Williams note that a farmer could be considered a merchant, but that the facts simply were insufficient to conclude that the farmer was a merchant in that particular case. *See Pierson*, 534 F. Supp. at 362 ("The court in each case must determine, on the basis of the evidence presented, whether an individual who is considered a farmer also possesses expertise in the area of marketing grain sufficient enough to classify him as a "merchant" within the purview of the Uniform Commercial Code."); *Sand Seed Service*, 249 N.W.2d at 666 ("It should be clear from what we have said that a farmer may indeed also be a merchant under certain circumstances. Whether he is or is not is ordinarily a question of fact."); *Lish*, 547 P.2d at 226 ("However, we would not exclude therefrom one who sells products he makes or raises, or otherwise acquires, if that is done with such regularity that it forms at least a substantial part of his occupation."). Accordingly, in many jurisdictions where the courts have held that farmers were not merchants with regard to the Statute of Frauds, the courts have not foreclosed the possibility that a farmer could

meet that standard.

In contrast, Brooks Cotton cites a number of jurisdictions where the courts have found that a farmer may qualify as a merchant for purposes of the Statute of Frauds. *See* ***Colorado-Kansas Grain Co. v. Reifschneider***, 817 P.2d 637 (Colo. Ct. App. 1991); ***Goldkist, Inc. v. Brownlee***, 355 S.E.2d 773 (Ga. Ct. App. 1987); ***Sierens v. Clausen***, 328 N.E.2d 559 (Ill. 1975); ***Sebasty v. Perschke***, 404 N.E.2d 1200 (Ind. Ct. App.1980); ***Barron v. Edwards***, 206 N.W.2d 508 (Mich. Ct. App. 1973); ***Dotts v. Bennett,*** 382 N.W.2d 85 (Iowa 1986); ***Musil v. Hendrich***, 627 P.2d 367 (Kan. Ct. App. 1981); ***Glacial Plains Co-op. v. Lindgren***, No. A10-185, 2010 WL 3307077, at *5 (Minn. Ct. App. Aug. 4, 2010); ***Dawkins & Co. v. L&L Planting Co.***, 602 So.2d 838, 843 (Miss. 1992); ***Rush Johnson Farms, Inc. v. Mo. Farmers Ass'n***, 555 S.W.2d 61 (Mo. Ct. App. 1977); ***Smith v. Gen. Mills, Inc.***, 968 P.2d 723 (Mont. 1998); ***Agrex, Inc. v. Schrant***, 379 N.W.2d 751 (Neb. 1986); ***R.F. Cunningham & Co. V. Driscoll***, 790 N.Y.S.2d 368 (N.Y. City Ct. 2005); ***Currituck Grain, Inc. v. Powell***, 246 S.E.2d 853 (N.C. Ct. App. 1978); ***Hagert v. Hatton Commodities***, 350 N.W.2d 591 (N.D. 1984); ***Ohio Grain Co. v. Swisshelm***, 318 N.E.2d 428 (Ohio 1973); ***Nelson v. Union Equity Co-op. Exchange***, 548 S.W.2d 352 (Tex. 1977); ***Lish v. Compton***, 547 P.2d 223 (Utah 1976); ***Aube v. O'Brien***, 433 A.2d 298 (Vt. 1981); ***Fred J. Moore, Inc. v. Schinmann***, 700 P.2d 754 (Wash Ct. App. 1985).

We find the Colorado case of ***Colorado-Kansas Grain Co. v. Reifschneider***, 817 P.2d 637 (Colo. Ct. App. 1991), to be particularly instructive. In determining that a farmer may be considered a merchant with regard to the Statute of Frauds, the Colorado Court of Appeals stated:

> In considering the question at issue, we note that the cases which hold that farmers may be merchants reflect on the fact that today's farmer is involved in far more than simply planting and harvesting crops. Indeed, many farmers possess an extensive knowledge and sophistication regarding the purchase and sale of crops on the various agricultural markets. Often, they are more aptly described as agri-businessmen.

*Id.* at 640. Having determined that a farmer could be a merchant for purposes of the Statute of Frauds, the court went on to determine whether the particular farmer in the case should be considered a merchant. In doing so, the court articulated the following test:

> In reaching its determination, a trier of fact should consider the following as well as any other relevant factors: (1) the length of time the farmer has been engaged in the practice of

-15-

selling his product to the marketers of his product; (2) the degree of business acumen shown by the farmer in his dealings with other parties; (3) the farmer's awareness of the operation and existence of farm markets; and (4) the farmer's past experience with or knowledge of the customs and practices which are unique to the particular marketing of the product which he sells.

*Id.* (citations omitted). Accordingly, the court found that because the farmer at issue had twenty years of experience selling corn, the farmer could be considered a "person who deals in goods of the kind." In addition, the court held that the farmer's extensive experience and knowledge of the futures market "supports [a] determination that he 'by his occupation [held] himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction.'" *Id.*

Mr. Williams argues, however, that facts are present in ***Colorado-Kansas Grain*** that are not present in the instant case. Specifically, Mr. Williams points out that the farmer in ***Colorado-Kansas Grain*** was the "president of a corporation involved in the purchase and sale of hay under futures contracts" in addition to being a farmer. *Id.* Accordingly, Mr. Williams argues that the farmer's specialized knowledge of business, rather than his simple practice of selling his annual crop, qualified him as a merchant for purposes of the Statute of Frauds.

However, other courts have found that farmers can be merchants based on facts similar to the facts in this case. For example, in ***Goldkist, Inc. v. Brownlee***, 355 S.E.2d 773 (Ga. Ct. App. 1987), the Georgia Court of Appeals reversed summary judgment based on the trial court's determination that the farmers in the case could not be considered merchants as a matter of law. *Id.* at 290. Instead, the court held that farmers who were familiar with the practice of oral booking of crops, as was allegedly practiced in this case, could be considered merchants for purposes of the Statute of Frauds. *Id.* at 298–90. In so holding, the court stated:

To allow a farmer who deals in crops of the kind at issue, or who otherwise comes within the definition of "merchant" [for purposes of the Statute of Frauds], to renege on a confirmed oral booking for the sale of crops, would result in a fraud on the buyer. The farmer could abide by the booking if the price thereafter declined but reject it if the price rose; the buyer, on the other hand, would be forced to sell the crop following the booking at its peril, or wait until the farmer decides whether to honor the booking or not.

> Defendants' narrow construction of "merchant" would, given the booking procedure used for the sale of farm products, thus guarantee to the farmers the best of both possible worlds (fulfill booking if price goes down after booking and reject it if price improves) and to the buyers the worst of both possible worlds. On the other hand, construing "merchants" [for purposes of the Statute of Frauds] as not excluding as a matter of law farmers such as the ones in this case, protects them equally as well as the buyer. If the market price declines after the booking, they are assured of the higher booking price; the buyer cannot renege, as [the merchant exception to the Statute of Frauds] would apply.

*Id.* at 289.

In another case, ***Rush Johnson Farms, Inc. v. Mo. Farmers Ass'n***, 555 S.W.2d 61 (Mo. Ct. App. 1977), the Missouri Court of Appeals held that the farmer at issue was a merchant for purposes of the Statute of Frauds when, for "many, many years," the farmer kept abreast of market prices in order to annually sell his crops. The court relied on the ordinary dictionary definition of the term "deals" to mean "to buy or sell." *Id.* at 64 (quoting Ballentine's Law Dictionary 308 (3rd ed. 1969)). Based on that definition, the court held that the farmer's practice of selling his annual crop for "many, many years" proved that the farmer "deals in goods of the kind." ***Rush Johnson Farms***, 555 S.W.2d at 64. In addition, the court stated:

> This court does not believe that anyone in this day and age looks upon any person or corporation who conducts a farming operation as a simple tiller of the soil. It is well known that the marketing of a crop is certainly as important as the raising of it. [The farmer] fully revealed in this case his knowledge of the market and his thorough familiarity with marketing practices and procedures in trying to obtain the best price possible for his product. Under the definition of merchant, as contained in the UCC, Johnson fully qualified as such so that the oral contract in this case was not barred under the statute of frauds . . . .

*Id.* The court further relied on the definition of goods contained in Missouri's version of the U.C.C., which is identical to the version adopted in Tennessee. According to the court, Missouri Revised Statute Section 400.2-105 defines goods as including "the unborn young of animals and growing crops." *Id.* at 63; *see also* Tenn. Code Ann. §47-2-105 (same definition). The court, therefore, concluded that the framers of the U.C.C. contemplated

farmers in their description of those who qualify as merchants under the Statute of Frauds when the framers approved the expansive definition of "almost every person in business." *Rush Johnson Farms*, 555 S.W.2d at 64–65. However, the court cautioned that not every farmer may meet the definition of a merchant, but that the determination of whether a farmer should be considered a merchant for purposes of the Statute of Frauds "would depend on the individual experience and activities of the person involved." *Id.* at 65.

We find the reasoning in *Colorado-Kansas Grain*, *Goldkist*, and *Rush Johnson Farms,* as well as other cases holding that farmers may be considered merchants, to be persuasive. *See also* *Dotts v. Bennett*, 382 N.W.2d 85 (Iowa 1986) (holding that jury's decision to consider farmer a merchant was not against the weight of the evidence even though the farmer only sold twenty percent of roughly 150 acres of hay per year when the farmer had fifteen years of experience selling hay, kept abreast of hay prices, and sold hay out of state); *Agrex, Inc. v. Schrant*, 379 N.W.2d 751 (Neb. 1986) (holding that "experienced grain producers who regularly grow and market grain on the open market as the principal means of providing for their livelihood, and by reason of such occupation have acquired and possess knowledge or skill peculiar to the practices and operations of grain marketing, are merchants"); *Ohio Grain Co. v. Swisshelm*, 318 N.E.2d 428 (Ohio 1973) (holding that the farmer was a merchant because he was "clearly familiar with farm markets and their operation and followed them with some care, . . . knew that corn was sold for varying prices, depending upon its moisture, quality and condition, and admitted having some idea that the same was true of beans"); *Nelson v. Union Equity Co-op. Exchange*, 548 S.W.2d 352 (Tex. 1977) (holding that the farmer who sold his annual wheat crop for his living and stayed abreast of market prices was a merchant because the merchant exception to the Statute of Frauds is intended to apply to all but the most casual and inexperienced sellers).

We conclude that the framers of the U.C.C. did not intend to exclude all farmers from the category of merchants, simply because a farmer's primary occupation is the cultivation, rather than the sale, of crops. The sale of crops is as integral to the business of commercial farming as the cultivation. The framers included crops in their definition of goods. Tenn. Code Ann. §47-2-105. Therefore, the framers clearly intended to include those that sell crops commercially in the definition of merchant, so long as that person either "deals in goods of the kind" or who "by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." In addition, the definition of merchant is broadly construed for purposes of the Statute of Frauds, encompassing "almost every person in business," including an experienced commercial farmer. Tenn. Code. Ann. §47-2-104, cmt. 2.

Based on the foregoing, we cannot conclude that the framers intentionally intended

to omit experienced commercial farmers from the category of merchants. Accordingly, we adopt the rule that a farmer may be considered a merchant for the purposes of the merchant exception to the Statute of Frauds, when the farmer possesses sufficient expertise in not only the cultivation, but also the sale of crops. However, the determination of whether a particular farmer is a merchant is a mixed question of fact and law, which must be determined on a case-by-case basis, taking into account "the individual experience and activities of the person involved." ***Rush Johnson Farms***, 555 S.W.2d at 65. Accordingly, we reverse the trial court's determination that "Tennessee's farmer[s]," as a whole, are considered merchants for purposes of the Statute of Frauds. Instead, trial courts should consider the following, nonexhaustive, criteria in determining whether a particular farmer is a merchant for purposes of the Statute of Frauds:

> (1) the length of time the farmer has been engaged in the practice of selling his product to the marketers of his product; (2) the degree of business acumen shown by the farmer in his dealings with other parties; (3) the farmer's awareness of the operation and existence of farm markets; and (4) the farmer's past experience with or knowledge of the customs and practices which are unique to the particular marketing of the product which he sells.

*Colorado-Kansas Grain*, 817 P.2d at 640 (citations omitted).

Applying the above factors to Mr. Williams, we note that several factors weigh in favor of a determination that Mr. Williams was a merchant for purposes of the Statute of Frauds. First, Mr. Williams testified that he had been a cotton farmer for approximately twenty-five years and that throughout the years, he sold both his and his landlord's cotton production. Next, Mr. Williams testified that he had previously engaged in oral crop "booking," a practice that other farmers testified was common in the cotton trade. Mr. Williams also testified that he determined when to sell his cotton, and at what price, by using a three-year history of his cotton sales, as well as daily notifications about the price of cotton on the cotton market. Mr. Williams also testified that he receives periodicals about cotton farming, such as *Cotton Grower*.

However, some factors weigh against a determination that Mr. Williams is a merchant for purposes of the Statute of Frauds. First, Mr. Williams testified that he does not engage in the practice of hedging; indeed, Mr. Williams testified that he was unaware of what the term "hedging" meant. However, the testimony of Mr. Brooks, as well as the depositions of several other area farmers, established that hedging is a practice that is unique and integral to the marketing of cotton. In addition, though Mr. Williams testified that he had previously

orally booked his cotton with Brooks Cotton, his testimony shows that he had only engaged in this practice once over the last several years. Further, the record is unclear whether the periodicals Mr. Williams receives deal with the cotton trade, or solely with cotton farming.

From our review of the pertinent factors, it is clear that the parties "disagree about the inferences and conclusions to be drawn from the facts," specifically whether the facts show that Mr. Williams was, in fact, a merchant. *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 87 (Tenn. 2010). Accordingly, to determine this issue, this Court would be forced to weigh the evidence in favor, and against, a conclusion that Mr. Williams is a merchant for purposes of the U.C.C. Statute of Frauds. However, summary judgment proceedings have never been envisioned as substitutes for trials of disputed factual issues. *Id.* (citing *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997)). Summary judgment "should not replace a trial when disputed factual issues exist, because *its purpose is not to weigh the evidence*, to resolve factual disputes, or to draw inferences from the facts." *Downs v. Bush*, 263 S.W.3d 812, 815 (Tenn. 2008) (emphasis added). Courts should grant summary judgment "only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). However, there are facts in this case both supporting and undermining a conclusion that Mr. Williams is a merchant for purposes of the U.C.C. Statute of Frauds. Therefore, we conclude that the existence of genuine issues involving the inferences to be drawn from the facts in this case should have prevented the trial court from granting summary judgment to either party. Accordingly, we affirm the denial of Mr. Williams motion for summary judgment, reverse the grant of Brooks Cotton's motion for partial summary judgment and remand to the trial court for a trial on the merits to determine if Mr. Williams should be considered a merchant for purposes of the U.C.C. Statute of Frauds.

## VI. Conclusion

The judgment of the Chancery Court of Crockett County is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. Costs are taxed equally to Appellant Bradley F. Williams, and his surety, and to Appellee Brooks Cotton Company, Inc., for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE