IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 24, 2020 Session

## CITY OF MEMPHIS v. JOHN PRITCHARD

**Appeal from the Circuit Court for Shelby County**
**No. CT-003469-16  Yolanda R. Kight, Judge**

_____

### No. W2019-01557-COA-R3-CV

_____

The City of Memphis appeals the dismissal of a parking ticket issued by the staff of the Downtown Memphis Commission. The City argues that the circuit court erred in granting summary judgment against it based on a wrongful interpretation of the authority delegated by city ordinances. Additionally, The City argues that genuine issues of material fact remained that prevented summary judgment and contends that the circuit court erred in not granting a motion to alter or amend its order. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

John J. Cook, Carl I. Jacobson, and Jonathan P. Lakey, Memphis, Tennessee, for the appellant, City of Memphis.

Murray Bruce Wells, Memphis, Tennessee, for the appellee, John Pritchard.

## OPINION

### BACKGROUND

This matter stems from a parking ticket placed by an employee of the Downtown Memphis Commission ("DMC") onto a vehicle owned by Appellee/Defendant John P. Pritchard ("Mr. Pritchard") on July 19, 2016. The parking ticket was issued in the Center Lane alley, an area where the DMC served as the regulatory authority. Mr. Pritchard appeared in Memphis City Court on August 16, 2016 and was fined $50.00 for the parking violation. Mr. Pritchard filed a notice of appeal to the Shelby County Circuit Court ("the trial court") on August 23, 2016.

On appeal to the trial court, Mr. Pritchard argued that his ticket was ultra vires and void, as DMC did not possess the requisite authority from the Plaintiff/Appellant City of Memphis ("the City") to issue the parking ticket. DMC claimed it relied on the following ordinance from the City for its authority:

> Enforcement of any power or authority granted the commission under this chapter or as mall management agency of District I or district management corporation of District II or any rules or regulations issued by the commission pursuant to such authority shall be delegated by the commission to any employee of the commission staff, who may obtain a summons through the city municipal court, and also to any city police officer, who may issue a summons or misdemeanor citation or effect a physical arrest for violations. In addition to the remedies provided herein, the commission may issue an order requiring any violator to cease or suspend the facility causing such violation and/or initiate court proceedings to enjoin such violation.

Memphis Code of Ordinances § 2-84-13.

Mr. Pritchard moved for summary judgment on January 8, 2018, arguing that only city police officers could issue summonses or citations, and that DMC employees could only obtain a summons through the Memphis City Court. Mr. Pritchard argued that neither occurred when a DMC employee issued its ticket. In response, the City asserted that DMC possessed the authority to issue the parking tickets by obtaining ticket books from the Memphis City Court Clerk's office. Further, the City argued that DMC employees issued these tickets in limited areas within downtown Memphis, including the area where Mr. Pritchard had parked illegally.

The trial court heard oral arguments regarding the motion for summary judgment on September 27, 2018. Summary judgment was granted to Mr. Pritchard in an order entered by the trial court on May 3, 2019. In the order granting summary judgment, the trial court found that the only issue in question was "whether [Memphis Code of Ordinances] section 2-84-13 authorizes employees of [DMC] to write parking tickets such as the one given to the Defendant in this case or was the ticket written in violation of Code 21-143 or Code 2-84-13." The trial court appeared to deem the ticket to be a traffic citation, but questioned whether the ticket in question was an ordinance summons or traffic summons. However, the trial court stated that DMC did not possess the authority to issue either an ordinance summons or traffic summons unilaterally. The trial court also considered whether the parking ticket was a citation in lieu of arrest under Tennessee Code Annotated section 7-63-101. The trial court stated its belief that "the ordinance as cited by the City as giving authority for DMC employees to issue parking tickets is misplaced." The trial court subsequently granted summary judgment for Mr. Pritchard. A corrected order was entered on August 2, 2019.

The City moved for the trial court to alter or amend its order granting summary judgment. Under Rule 59.04 of the Tennessee Rules of Civil Procedure, the City argued that the trial court clearly erred by disregarding multiple state statutes and city ordinances in its analysis. The City also contended that the ticket given to Mr. Pritchard was classified as a citation, but not a misdemeanor citation as outlined in the city's ordinance. The trial court denied the City's motion to alter or amend its judgment in an order entered on August 8, 2019. The City timely filed a notice of appeal.

## ISSUES PRESENTED

The City raises three issues on appeal, which we slightly restate as follows:

1.      Whether the trial court erred in its interpretation of state statutes and city ordinances when determining whether the DMC and its employees could issue parking tickets within its jurisdiction.
2.      Whether the trial court erred in granting summary judgment to Mr. Pritchard when genuine issues of material fact remained regarding DMC's authority to issue parking tickets.
3.      Whether the trial court failed to alter its judgment after considering the additional authority and materials provided by the City.

## DISCUSSION

### I.      Motion for Summary Judgment

This case was resolved by the trial court through a grant of summary judgment. Summary judgment is appropriate when: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A defendant, as the party that does not bear the burden of proof at trial, may therefore obtain summary judgment if it: (1) affirmatively negates an essential element of the nonmoving party's claim; or (2) demonstrates that the nonmoving party's evidence at the summary judgment stage is insufficient to establish an essential element of the nonmoving party's claim. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452, 195 L. Ed. 2d 265 (2016).

On appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's grant of summary judgment

- 3 -

will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to specific evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65.

We must therefore first determine whether material factual disputes exist that preclude summary judgment. *See Frame v. Davidson Transit Org.*, 194 S.W.3d 429, 433 (Tenn. Ct. App. 2005) ("When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial."). On appeal, the City asserts that disputes of material fact are present in this case resulting from the affidavit of Debra Streeter, the DMC director of security, stating that employees of the commission had explicit authority from the City to issue tickets in limited circumstances.[1]

Mr. Pritchard notes that the City conceded that there were no material facts in dispute prior to the entry of the order of summary judgment. Specifically, in response to Mr. Pritchard's motion for summary judgment, the City asserted that "[t]his case presents a narrow issue concerning only the interpretation of § 2-84-13 of the Memphis Code of Ordinances. The facts giving rise to this matter are undisputed[.]" Typically, when a party raises an argument for the first time in a motion to alter or amend, we will deem the argument waived, as motions to alter or amend are not vehicles for raising "new, previously untried or unasserted theories or legal arguments." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). In the summary judgment context, however, we have previously considered whether factual disputes exist "even if both parties allege that no material facts are in dispute." *Shacklett v. Rose*, No. M2017-01650-COA-R3-CV, 2018 WL 2074102, at *4 (Tenn. Ct. App. May 2, 2018) (citing *Brooks Cotton Co., Inc. v. Williams*, 381 S.W.3d 414, 419 (Tenn. Ct. App. 2012); *Liput v. Grinder*, 405 S.W.3d 664, 670 (Tenn. Ct. App. 2013)).

In any event, we conclude that Ms. Streeter's affidavit does not preclude summary judgment in this case. Here, the City responded to Mr. Pritchard's statement of undisputed material facts by admitting that Memphis Code of Ordinances section 2-84-13 "governs enforcement of any power or authority" granted to DMC. In addition to this fact, the City alleged that the subject ticket "was issued pursuant to the authority granted in Memphis Code of Ordinances § 2-84-13." In support of this fact, the City cited the affidavit of Ms. Streeter. Therein, Ms. Streeter again recites that the ticket was issued pursuant to the authority granted under Memphis Code of Ordinances section 2-84-13. Thus, both the

---

[1] An exchange of emails between City and DMC officials regarding the long-standing practices were later used to support this argument in the City's motion to alter or amend the summary judgment order. This evidence is considered, *infra*.

City's response to Mr. Pritchard's statement of undisputed material facts and Ms. Streeter's affidavit do no more than assert that the authority for the issuance of the ticket in this case stems from section 2-84-13. The crux of this case therefore remains whether section 2-84-13 or any other law actually authorizes the issuance of the ticket at issue.

The parties' ongoing dispute as to whether this ordinance actually authorizes the action of DMC staff is therefore not a disputed fact, but a dispute as to the interpretation of an ordinance and its application to the facts at issue. This question, as the City initially asserted in the trial court, is an issue that is appropriate for resolution by summary judgment. *See Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 766 (Tenn. Ct. App. 2015) ("The proper interpretation of a statute is an issue of law that may commonly be decided on summary judgment."). Indeed, municipal ordinances are to be construed in the same manner and under the same rules as those applicable in the statutory construction context. *See Silverman v. KRSNA, Inc.*, No. M2001-01921-COA-R9-CV, 2002 WL 1015855, at *3 (Tenn. Ct. App. May 21, 2002) (citing *Tennessee Manufactured Housing Ass'n v. Metro. Government of Nashville*, 798 S.W.2d 254 (Tenn. Ct. App. 1990)) ("In determining the proper construction of a municipal ordinance, we must follow the same rules as those used for construing statutes."). The "[c]onstruction of a statute and its application to the facts of the case is an issue of law[.]" *Lavin v. Jordon*, 16 S.W.3d 362, 364 (Tenn. 2000). And, again, issues of law may be decided by summary judgment. *Estate of Brown*, 402 S.W.3d 193, 197 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn.2012)) ("Summary judgments are appropriate in virtually any civil case that can be resolved solely on issues of law.").

The City's assertion that section 2-84-13 authorizes the actions of DMC staff in this case is therefore properly characterized as a legal conclusion. A genuine dispute of fact that will prevent summary judgment, however, cannot be based solely on a legal conclusion drawn from the otherwise undisputed facts. *See Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). ("A genuine issue for purposes of Rule 56.03 does not include mere legal conclusions to be drawn from those facts."); *see also Countryside Ctr., LLC v. BPC of Memphis, LLC*, No. W2017-01778-COA-R3-CV, 2018 WL 3773896, at *5 (Tenn. Ct. App. Aug. 9, 2018) (quoting *Byrd*, 847 S.W.2d at 211 ("The phrase 'genuine issue' contained in Rule 56.03 refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts."). The fact that the City supports its interpretation with the affidavit of Ms. Streeter is irrelevant. Respectfully, a party's belief as to the interpretation of a statue or ordinance is not binding on this Court, as issues of statutory construction and interpretation are issues of law to be decided by the court alone. *See Howe v. Haslam*, No. M2013-01790-COA-R3-CV, 2014 WL 5698877, at *25 (Tenn. Ct. App. Nov. 4, 2014) (McBrayer, J., concurring in part) (quoting *Mast Adver. & Pub., Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993) ("[Q]uestions of law are not subject to stipulation by the parties to a lawsuit and . . . a stipulation purporting to state a

proposition of law is a nullity.")). The trial court therefore did not err in concluding that there were no material factual disputes that would preclude summary judgment in this case.

We therefore turn to consider the central dispute in this case. The City does not dispute that DMC employees are bound by the ordinances approved by the Memphis City Council. *See generally Harding Academy v. Metro. Gov't of Nashville and Davidson Cty.*, No. M2004-02118-COA-R3-CV, 2006 WL 627193, at \*5 (Tenn. Ct. App. Mar. 14, 2006), *aff'd as modified* 222 S.W.3d 359 (Tenn. 2007) (where a municipal building official was an administrative agent "bound by the zoning ordinances adopted by the local legislative body."). The question presented by this appeal therefore concerns whether the Memphis ordinances and Tennessee statutory law authorize the issuance of the ticket in this case.[2] In resolving this dispute, we keep in mind the following principles applicable to our analysis:

> Our principal goal in statutory construction is to give effect to the intent of the legislature. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997). "Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Carson Creek Vacation Resorts, Inc. v. State, Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993) (citation omitted). It is not within the province of the courts to alter or amend a statute. *Gleaves*, 15 S.W.3d at 803 (Tenn. 2000) (citations omitted). Similarly, the judiciary should not substitute its own policy judgment for that of the legislature. *Id.* (citation omitted). It is our duty to interpret and enforce the enactment as written. *Id.* (citation omitted).

*Garrett v. City of Memphis*, 327 S.W.3d 37, 40 (Tenn. Ct. App. 2010).

Pursuant to Tennessee Code Annotated section 7-8-520, municipalities have the authority to delegate to a "district management corporation" through an establishment ordinance the power to, inter alia, provide services for the improvement and operation of the district including services related to public safety and the "[e]limination of problems related to traffic and parking[.]" Tenn. Code Ann. § 7-84-520(4). The power of the municipality and the delegated district management corporation is "limited only by the establishment ordinance." Tenn. Code Ann. § 7-84-520. DMC was established by the City via ordinance to serve as the City's district management corporation for the downtown area. *See* Memphis Code of Ordinances § 2-84-2 (creating the center city commission, which the parties do not dispute is known as DMC); § 2-84-3 (stating that the commission "shall act as the district management corporation for District No. II[,]" which undisputedly

---

[2] In resolving this seemingly simple question, both the trial court's order and the parties' briefs on appeal contain considerable tangential argument concerning, *inter alia*, citations in lieu of arrest and the alleged "clerical" nature of the ticketing at issue. We address only those arguments that are necessary to the resolution of the dispositive question on appeal.

contains the downtown area of Memphis). The DMC was designated as "the regulatory body . . . for the purpose of regulating . . . vehicular traffic" in the area. *Id.* § 2-84-4. DMC also has the power to "[c]onduct the business necessary for the management and operation of the Main Street Mall, including, but not limited to, promotions, maintenance, security transportation and parking coordination, special events, and any other functions in connection with the operation of the mall." *Id.* § 2-84-7(B)(4). In another chapter related to District II, the City also provides that DMC has "power[]" to "exercise all rights and powers necessary or incidental to or implied from the specific powers granted in this chapter[.]" *Id.* § 12-44-7(H). As such, "such specific powers shall not be considered as a limitation upon any power necessary or appropriate to carry out the purposes and intent of this chapter." *Id.* In order to carry out these functions, DMC is authorized to employ a salaried staff. *Id.* § 2-84-7(A)(2) & (B)(2).

Returning to the present case, the dispute between Mr. Pritchard and the City concerns DMC's authority to issue a parking ticket to Mr. Pritchard in the manner utilized by DMC staff. Both parties agree that this question implicates Memphis Code of Ordinances section 11-8-1:

> *Ordinance summons* is a ticket issued to an offender by a police office or other person authorized by law under T.C.A. § 7-63-101 to appear in the city court for any offense other than traffic, showing the offense charged and signed by the offender agreeing to appear at the place and time indicated; the ordinance summons being issued for violation of any other ordinance, law or regulation of the municipality in the presence of the police officer or other designated official authorized to issue such summonses by T.C.A. § 7-63-101.
> *Summons* is the process issued by the city court, and signed by the judge or clerk as provided by law, and served by personal service or certified or registered mail, as provided by law.
> *Traffic citation* is any ticket issued by a police officer or other person authorized by law where there is no personal delivery of the ticket to the offender and the ticket is not signed by the offender, such as a parking ticket.
> *Traffic summons* is any ticket issued to an offender by a police officer or other person authorized by law to appear in the city court, showing the offense charged and signed by the offender agreeing to appear at the time and place indicated, or to appear in the traffic violations bureau on or before the time indicated to pay the forfeiture required or to request a trial date.

Memphis Code of Ordinances § 11-8-1.

In the trial court, it appears that there was some confusion among the parties and the trial court as to the proper classification of the ticket issued pursuant to the above definitions. The City contends that the ticket constitutes a "traffic citation" as defined by

section 11-8-1.[3] We agree. Both the "traffic summons" and the "ordinance summons" must be "signed by the offender[.]" *Id.* While the definition of a general "summons" does not require an offender's signature, it must be signed by a judge or clerk and then served through personal service or registered mail. *Id.* The parking ticket at issue in this case was not signed by Mr. Pritchard, a judge, or a clerk. The ticket was never personally delivered or mailed to him. Instead, this ticket clearly fits the definition of a "traffic citation[,]" as it was not personally delivered but instead left on Mr. Pritchard's car. Indeed, the example provided in the "traffic citation" definition is exactly what is at issue here: a parking ticket.[4] *See generally **Dattel Family Ltd. P'ship v. Wintz**,* 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007) ("This Court . . . is not required to check common sense at the courthouse door.").

Having determined that the ticket at issue constitutes a "traffic citation," we must next consider whether DMC was authorized to issue it. Under the definition of "traffic citation" two categories of persons are authorized to issue these citations: police officers and "other person[s] authorized by law[.]" Memphis Code of Ordinances § 11-8-1. Mr. Pritchard's citation was not issued by a police officer. Consequently, we must look to other law to determine whether DMC was authorized to issue the citation.

The City contends that the authority for the issuance of traffic citations or parking tickets may be found in the broad grant of authority to the DMC to regulate parking and traffic in the downtown area. Specifically, the City cites Memphis Code of Ordinances section 2-84-13, which provides as follows:

> Enforcement of any power or authority granted the commission under this chapter or as mall management agency of District I or district management corporation of District II or any rules or regulations issued by the commission pursuant to such authority shall be delegated by the commission to any employee of the commission staff, who may obtain a summons through the city municipal court, and also to any city police officer, who may issue a summons or misdemeanor citation or effect a physical arrest for violations. In addition to the remedies provided herein, the commission may issue an

---

[3] The City spends a considerable portion of its brief asserting that the ticket does not constitute a citation in lieu of arrest under Tennessee Code Annotated section 7-63-101. Because we agree with the City that the ticket was a traffic citation, we need not tax the length of this Opinion with consideration of that argument.

[4] Mr. Pritchard does not concede that the ticket he received actually qualifies as a traffic citation because the procedure contained on the face of the ticket does not comply with section 11-8-1. Procedurally, the citation should provide for payment within 15 days from issuance. If no payment is made, a summons shall be issued as provided in the City's charter. We note that the ticket received by Mr. Pritchard instructed a failure to pay within 15 days would lead to the ticket being placed on the municipal court docket and a possible judgment against him. Because we conclude that even if the ticket is a traffic citation under section 11-8-1, it was not authorized by the applicable ordinances, we need not address this argument.

order requiring any violator to cease or suspend the facility causing such violation and/or initiate court proceedings to enjoin such violation.

Memphis Code of Ordinances § 2-84-13. Because this ordinance is at the center of this case, the parties take conflicting views of its meaning. Neither party disputes that this ordinance provides DMC with broad authority over parking issues, as detailed *supra*.

Mr. Pritchard argues, however, that section 2-84-13 provides specific limitations over how that power may be utilized by two classes of actors: DMC staff and police officers. Specifically, Mr. Pritchard contends that section 2-84-13 provides police officers with the authority to issue summonses and misdemeanor citations, as well as effect physical arrests. Under Mr. Pritchard's interpretation, the language limits DMC staff to only a single action: obtaining a summons through the city municipal court. And because DMC staff did not obtain a summons, but issued a traffic ticket not expressly authorized to be issued by DMC staff, Mr. Pritchard contends that the action was without authority.

The City disagrees that section 2-84-13 should be read in such a narrow manner. Rather, the City contends that merely because an option was omitted from section 2-84-13, does not indicate that such action by DMC staff was unauthorized. By expressly limiting DMC staff's authority with regard to summonses—that they may "obtain" them—and expressly authorizing police to issue a summons or a misdemeanor citation or affect a physical arrest, the only effect is that DMC staff are not permitted to take the actions delegated solely to police, i.e., issuing summonses and misdemeanor citations, as well as affecting arrests. Under this interpretation, the language does not limit either class of person's authority over traffic citations. The absence of a specific grant of authority to issue traffic citations is therefore not fatal to the DMC's action. Rather, the authority to issue traffic citations, by virtue of *not* being mentioned in section 2-84-13, is preserved for both police officers and DMC staff under the broad authority granted to DMC. *See, e.g.*, Memphis Code of Ordinances 12-44-7(H) (noting that the specific powers granted to DMC should "not be considered as a limitation upon any power necessary or appropriate to carry out the purposes and intent of this chapter"). Under this interpretation, Mr. Pritchard's traffic citation is valid.

Neither party makes a particularly compelling argument in support of its interpretation of section 8-24-13. For its part, the City contends that these ordinances should be construed liberally to effectuate their purpose. *See* Tenn. Code Ann. § 7-84-508 ("This part, being necessary to secure and preserve the public health, safety, convenience and welfare, shall be liberally construed to effectuate its purposes."). The purpose being to regulate parking, the City contends that section 8-24-13 should be construed to authorize the action by DMC staff at issue. In contrast, Mr. Pritchard points to the plain language of section 8-24-13, which he asserts provides DMC staff only with authority as expressly contained therein, i.e., to obtain a summons from city court.

As previously discussed, ordinances, like statutes, are subject to the general rules of statutory construction. *See Silverman*, 2002 WL 1015855, at *3. Courts do not read ordinances or statutes "in isolation and are required to construe them 'as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose.'" *Griffin v. Campbell Clinic, P.A.*, 439 S.W.3d 899, 903 (Tenn. 2014) (quoting *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 750 (Tenn. 2001)). One important rule of construction is that a specific provision of a statute or ordinance will control over a more general provision. *See, e.g., State v. Davis*, 173 S.W.3d 411, 415 (Tenn. 2005) ("Lastly, specific statutory language will control over general statutory language."); *Washington v. Robertson County*, 29 S.W.3d 466, 475 (Tenn. 2000) (holding that a more specific statutory provision applies over a more general one); *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998) (citation omitted) ("As a matter of statutory construction, a specific statutory provision will control over a more general statutory provision.").

After a review of the language of the relevant ordinance and other relevant ordinances, we cannot credit the interpretation proffered by the City. Essentially, the City argues that the broad power granted to DMC to regulate parking must include the power of DMC staff to issue parking citations, unless that power is expressly limited by ordinance. The definition of a traffic citation, however, indicates that other than police officers, individuals giving out these citations must be "authorized by law[.]" Memphis Code of Ordinances § 11-8-1. While DMC was granted broad authority over parking issues in the relevant area, nothing in those establishment statutes indicates that that DMC staff are authorized to issue parking tickets through that grant of power.

Moreover, the language of section 2-84-13 cannot be ignored. Essentially, section 2-84-13 provides a broad grant of power, but then places conditions on how that power may be utilized. The City contends that this section's silence as to DMC staff's authority to issue traffic citations should be read as authorization. Respectfully, the rules of statutory construction do not support this interpretation.

In analyzing the intent of an enactment through its words, we often "employ the canon of construction *expressio unius est exclusio alterius*, 'which holds that the expression of one thing implies the exclusion of others. . . .'" *SunTrust Bank v. Burke*, 491 S.W.3d 693, 697 (Tenn. Ct. App. 2015) (quoting *Rich v. Tenn. Bd. of Medical Examiners*, 350 S.W.3d 919, 927 (Tenn. 2011)). Section 2-84-13 expressly provides that DMC staff may enforce DMC's power by obtaining summonses from city court. This section does not give DMC staff the power to issue traffic citations, even though traffic citations are an available method of enforcement for parking violations under section 11-8-1. The enacting authority is presumed to know both the state of the law and its present enactments. *Hicks v. State*, 945 S.W.2d 706, 707 (Tenn. 1997) (dealing with statutes). We must therefore presume that the City Council "intentionally omitted" such a grant of power to DMC staff. *Ken Smith Auto Parts v. Thomas*, 599 S.W.3d 555, 565–66 (Tenn. 2020) (citing *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015) (citation omitted) ("A statute should be read naturally and

reasonably, with the presumption that the legislature says what it means and means what it says.")). And because this limitation is specific to the power entrusted to *DMC staff* in this particular area, we must conclude that it controls over any more general ordinances that deal generally with the power of DMC *as an entity*, discussed in detail *supra*. *See* ***Davis***, 173 S.W.3d at 415.

Other sources support this interpretation. Importantly, the final sentence of section 2-84-13 provides that "[i]n addition to the remedies provided herein," the commission can take other actions as specifically set forth therein. This language should be read "naturally and reasonably . . . without complicating the task." ***In re Samaria S.***, 347 S.W.3d 188, 203 (Tenn. Ct. App. 2011) (citations omitted). This language indicates that the tasks allowed by each class of actor in section 2-84-13 are intended to be the sole remedies available for the exercise of the broad powers contained therein. The City's interpretation, wherein silence is the authorization for an exercise of power, rather than the exclusion thereof, largely negates the language that remedies available are provided "herein[,]" that is, within the language of section 2-84-13. We must not, however, interpret an enactment in a way that renders any part of its meaningless. *Id.* at 203. ("The statute should not be interpreted to render any part of it meaningless or superfluous.").

Importantly, this interpretation does not yield an absurd result wherein no class of actor is permitted to issue traffic citations. We concede that section 2-84-13 does not authorize any person to perform that function. As previously discussed, however, the definition of traffic citation specifically authorizes police officers to issue traffic citations. Memphis Code of Ordinances § 11-8-1 (stating that a traffic citation may be "issued by a police officer"). Indeed, other ordinances governing traffic citations also suggest that the power may be limited to police officers. For example, Memphis Code of Ordinances section 11-8-11(a) provides that in lieu of filing written traffic citations and traffic summonses, law enforcement officers may file electronic traffic citations[.]" Thus, only law enforcement officers, i.e., police officers, rather than DMC staff, may file electronic traffic citations.[5]

In sum, the ordinances cited by the City do not support the issuance of traffic citations by DMC staff.[6] Because traffic citations must be issued by either a police officer

---

[5] The statute that allows electronic traffic citations even contains language to suggest that a written traffic citation must be prepared by an "officer[.]" *See* Tenn. Code Ann. § 55-10-207(c)(2) ("Any traffic citation prepared as a paper copy shall be executed in triplicate, the original to be delivered to the court specified therein, one (1) copy to be given to the person cited, and one (1) copy to be retained by the officer issuing the citation."). This issue was not raised or litigated in this case.

[6] As previously discussed, the City makes an additional argument in its brief that the issuance of the ticket in this case was a clerical action, rather than a police action, citing law from outside our jurisdiction. As discussed throughout this opinion, section 11-8-1 indicates that non-police officers may indeed issue traffic citations if authorized by law. The City, however, has not shown any ordinance or statute that authorized the action of the DMC staff at issue in this case. Thus, the characterization of this

or another person "authorized by law," it appears that the traffic citation in this case was invalid. The trial court therefore did not err in granting summary judgment to Mr. Pritchard based upon the undisputed facts in the record.

## II.     Motion to Alter or Amend the Order Granting Summary Judgment

In addition, the trial court did not err in its denial of the City's motion to alter or amend its order granting summary judgment. Rule 59.04 of the Tennessee Rules of Civil Procedure provides that motions to alter or amend judgment may be filed within thirty days of the entry of an otherwise final judgment. "The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing trial courts with an opportunity to correct errors before a judgment becomes final." *Bradley v. McLeod*, 984 S.W.2d 929, 932 (Tenn. Ct. App. 1998). "Rule 59 can provide relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect." *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009) (comparing Rule 59.04 to Rule 60.02 allowing relief from final judgments).

A motion to alter or amend "'may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice.'" *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) (quoting *Bradley*, 984 S.W.2d at 933). The purpose of a motion is to "'allow[] the trial court to correct any errors as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters.'" *Vaccarella*, 49 S.W.3d at 312 (quoting *Chadwell v. Knox County*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998)). A trial court's decision to grant or deny a motion to alter or amend is reviewed for an abuse of discretion. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). An abuse of discretion occurs it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

Here, the City contends that the trial court clearly erred when considering the law and should have granted the motion to alter or amend when presented with additional authority. The City references the trial court's summary judgment order, which granted judgment in favor of Mr. Pritchard "absent some additional authority[.]" When a party can establish that an "initial order was based on errors of law", a trial court should not deny a motion to alter or amend the court's judgment. *In re Leyna A.*, No. M2016-02548-COA-R3-JV, 2017 WL 4083644, at *4 (Tenn. Ct. App. Sept. 15, 2017); *see also In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (holding that a motion should be granted "to correct a clear error of law or to prevent injustice").

---

unauthorized action as either clerical or a police action is irrelevant to the resolution of this appeal.

In its motion, the City provided additional Memphis municipal ordinances to establish that the DMC possessed the broad authority to issue tickets, despite not citing them when arguing against the motion for summary judgment. The City also provides correspondence from 2010 that details how municipal officers interpreted section 2-84-13 regarding traffic citations, summons, and other enforcement methods. After reviewing the ordinances and the City's broader argument, the trial court denied the motion to alter or amend the order. Upon our own review of the ordinances in question, as shown *supra*, we cannot conclude that the trial court clearly erred when analyzing the facts and law in its order granting summary judgment. While DMC staff may have issued the parking tickets as part of a long-standing practice, we have determined that the Memphis Code of Ordinances do not authorize the issuance of traffic citations by these individuals. Moreover, although a different interpretation may have been intended or expected, we must apply unambiguous laws "as written" without altering or amending the enactment. **Hughes**, 387 S.W.3d at 471 (citing **Frazier v. State**, 495 S.W.3d 246, 249 (Tenn. 2016)). Moreover, we have considered the additional ordinances cited by the City in its motion to alter or amend, *supra*, and concluded that they are no support for the actions of DMC staff in this case. *But cf.* **Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 v. City of Memphis**, No. W2017-00665-COA-R3-CV, 2017 WL 4842336, at *10 (Tenn. Ct. App. Oct. 24, 2017) (holding that while the court has the duty to apply the correct law whether cited or not, the court is under no duty to apply ordinances that were not timely brought to the trial court's attention) (citing Tenn. R. Evid. 202 (concerning discretionary judicial notice of ordinances)). As such, we conclude that the trial court did not abuse its discretion in denying the motion to alter or amend its order granting summary judgment.

## CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to the Appellant City of Memphis, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 13 -