IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2023 Session

## LISA KELLEY ET AL. v. NATHANIEL ROOT ET AL.

**Appeal from the Circuit Court for McNairy County**
**No. 2019-CV-12       J. Weber McCraw, Judge**

_____

**No. W2022-01625-COA-R3-CV**

_____

The mother of a high school student involved in an altercation with the opposing basketball team's coach appeals the trial court's grant of summary judgment to the coach and the county board of education. Because the video footage of the altercation is open to more than one interpretation, a genuine dispute of material fact remains as to the intention behind the coach's contact with the student and summary judgment is reversed as to the state law assault and battery claims against the coach. The grant of summary judgment as to the remaining claims against both the coach and the board is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and ARNOLD B. GOLDIN, JJ., joined.

Benjamin A. Gastel, Nashville, Tennessee, and Alyson S. Beridon, Cincinnati, Ohio, for the appellant, Lisa Kelley, individually and as next friend of Tyler Kelley.

Andrew V. Sellers and Katherine C. Wallace, Jackson, Tennessee, for the appellee, McNairy County Board of Education.

Nathan D. Tilly, Jackson, Tennessee, for the appellee, Nathaniel Root.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2019, Plaintiff/Appellant Lisa Kelley filed a complaint in the McNairy County Circuit Court ("the trial court") for herself and her minor son, Tyler Kelley (together with Ms. Kelley, as represented by Ms. Kelley as next friend in this lawsuit, "Appellants"). The complaint described a February 2019 fight that broke out at the end of a high school basketball game between Adamsville High School and Scotts Hill High School. Tyler, then age fourteen, was serving as a manager for the Scotts Hill team and Ms. Kelley was also in attendance. According to the complaint, Tyler was in the process of separating participants in the fight when Defendant/Appellee Nathaniel Root, coach for the Adamsville team, "became an active participant in this fight and forcefully punched Tyler, without provocation." Tyler was allegedly thrown off balance, toppling over into the courtside bleachers and "bang[ing] his face against these bleachers resulting in a temporary loss of consciousness and serious injuries that required medical attention including a trip to the emergency room, a CT scan, and a visit to his orthodontist to repair some of the damage done to his teeth." Ms. Kelley, standing nearby, "had a close-up view of her son's head hitting the bleachers and the resulting injury, including a mouthful of so much blood that she could not see his teeth[,]" which image and trauma resulted in "such mental distress that she regularly experience[d] panic attacks and . . . severe loss of sleep[.]"

The complaint raised four causes of action on behalf of Tyler: (1) under 42 U.S.C. section 1983 against Coach Root, in his individual capacity and his official capacity as an employee of Defendant/Appellee the McNairy County Board of Education ("the Board"),[1] for assaulting and battering Tyler while employed by a public agency; (2) under 42 U.S.C. section 1983 against the Board for failing to properly train and supervise Coach Root; (3) assault and battery against both Coach Root and the Board; and (4) negligence against the Board and Defendant the Tennessee Secondary Schools Athletic Association ("the TSSAA")[2] for failing to properly supervise and train game officials in how to properly handle fights at sporting events. A claim for intentional infliction of emotional distress ("IIED") was raised on behalf of Ms. Kelley against Coach Root and the Board. The complaint also sought punitive damages against Coach Root and the Board based on the "malicious, intentional, and reckless nature" of the alleged assault and battery. All claims against the TSSAA were subsequently dismissed by stipulation. Both remaining defendants filed motions to dismiss.

Coach Root filed a motion for summary judgment on May 13, 2022, relying

---

[1] "[A]n action against a municipal or county officer in an official capacity under 42 U.S.C. § 1983 is treated as an action against the governmental entity." *Jackson v. Thomas*, No. M2010-01242-COA-R3-CV, 2011 WL 1049804, at *3 (Tenn. Ct. App. Mar. 23, 2011) (citing *Campbell v. Anderson County*, 695 F. Supp. 2d 764, 770 (E.D. Tenn. 2010)).

[2] The TSSAA "is a voluntary association comprised of secondary schools in the State. . . . Its purpose is to stimulate and regulate the athletic programs of its members." *Tenn. Secondary Sch. Athletic Ass'n v. Cox*, 221 Tenn. 164, 170, 425 S.W.2d 597, 599 (1968).

primarily on Tyler's deposition testimony and video footage of the altercation. The motion argued that Coach Root's behavior was neither "brutal or offensive" enough to shock the conscious, outrageous or extreme enough to be intolerable by civilized society, nor intended to harm or frighten Tyler or Ms. Kelley. Instead, Coach Root only "intended to de-escalate the altercation between students and players and to protect both his players and himself from physical harm."

The Board filed its own motion for summary judgment on May 16, 2022. First, the Board argued that it retained sovereign immunity under the Tennessee Governmental Tort Liability Act ("the GTLA"). Second, the Board asserted that Appellants failed to present proof of prior fights at a sporting event within the school district or Coach Root's alleged history of anger management and aggression sufficient to establish any deliberate indifference or failure to train by the Board. Similarly, the lack of prior fights at sporting events prevented a finding that the instant incident was foreseeable.

In response to Coach Root's motion, Appellants argued that, as the non-moving party, they were entitled to have all reasonable inferences drawn in their favor yet Coach Root's characterization of his actions was belied by the video evidence and would require inferences to be drawn in his favor. Before responding to the Board's substantive claims, Appellants clarified which claims against the Board remained. Appellants explained that they had not contested the Board's earlier motion to dismiss the claims of negligence and IIED, and had conceded that they were not entitled to punitive damages based on negligence or section 1983. Accordingly, although all of the originally pleaded claims against Coach Root remained, the only remaining claims against the Board were (1) under section 1983 "for the assault and battery against Tyler Kelley as the governmental entity that employed [Coach] Root"; (2) under section 1983 for failure to train and supervise Coach Root; (3) assault and battery; and (4) punitive damages on the assault and battery claim. As to the merits of the motion, Appellants argued that fights at high school sporting events are foreseeable and the Board acted with deliberate indifference by failing to train Coach Root on how to deal with such incidents. Moreover, the Board did not argue that Coach Root was acting outside the scope of his employment and the GTLA does not provide immunity for the intentional torts of assault and battery committed by an employee where the employer's negligent failure to supervise was also pleaded. And because the Board could be held liable for Coach Root's assault and battery, so too could it be liable for punitive damages associated with those claims.

By order of November 3, 2022, the trial court granted summary judgment for both Coach Root and the Board. The trial court found that Coach Root's actions "in no way demonstrated 'an intent to harm,' nor did they 'shock the conscience.' Instead, the proof establishes that [Coach] Root acted in order only to protect his player and himself from harm." Similarly, the trial court ruled that "the undisputed facts show that [Coach] Root never had any intent to harm Tyler or to cause Tyler any apprehension of potential harm"

and that

> the proof shows that after realizing Tyler's punch likely intended for an
> Adamsville player was about to strike him, [Coach] Root used his arm to
> block the punch and protect himself. And [Coach Root] raising his arm to
> protect his player and himself from being punched resulted in a reasonable
> contact necessary to accomplish a legitimate, official purpose of a head coach
> protecting his player and himself from imminent harm.

The trial court also found that Coach Root's conduct did "not come close to the requisite
outrageous conduct necessary to set forth an [IIED] claim."

Next, the trial court found that Appellants' section 1983 claim that the Board was
vicariously liable for the assault and battery allegedly committed by Coach Root
necessarily failed because no assault and battery occurred. Moreover, the trial court found
that, under the GTLA, a governmental entity cannot be held liable for an assault and battery
by its employee without some direct negligence by the entity and Appellants had already
conceded that the GTLA's "civil rights" exception prevented them from holding the Board
liable for negligence. Thus, their state law assault and battery claim also failed and
Appellants were not entitled to either compensatory or punitive damages on the claim.
Finally, as the undisputed facts showed that the instant fight was the only such incident to
occur within the school district and there was no evidence that Coach Root had a history
of anger management issues, the trial court found that Appellants' section 1983 failure to
train or supervise claim also failed.

Appellants filed a timely appeal.

## II. STANDARD OF REVIEW

Although each party uses slightly different phrasing, the question before us on
appeal is whether the trial court erred in granting summary judgment to both Coach Root
and the Board. We review the trial court's grant of summary judgment de novo, with no
presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d
235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure
v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of
our review, we must "take the strongest legitimate view of the evidence in favor of the
nonmoving party, allow all reasonable inferences in favor of that party, and discard all
countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations
omitted), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008),
*holding modified by Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by
the non-moving party as true and resolve any doubts about the existence of a genuine issue
of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887

(Tenn. 2019) (citing **Martin v. Norfolk S. Ry.**, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." **Rye**, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party may not rest on the allegations or denials in its pleadings. **Id.** at 265. Instead, the non-moving party must respond with specific facts showing that there is a genuine issue of material fact to be resolved at trial. **Id.** A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." **Byrd**, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." **Id.** "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." **Brooks Cotton Co. v. Williams**, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (alteration in original) (quoting **Landry v. S. Cumberland Amoco**, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

### III. ANALYSIS

### A. Claims Against Coach Root

The trial court's dismissal of the claims against Coach Root primarily focused on two essential elements: the intention behind the contact and the offensive or outrageous nature of the contact. Finding that there was no dispute as to these material facts, the trial court determined that no genuine issue remained for trial on any of Appellants' claims.

#### 1. Assault and Battery

We first address those claims where the trial court's dismissal hinged on a determination of intent: assault and battery. Assault occurs when "a defendant intends to create an apprehension of harm in the plaintiff[.]" **Hughes v. Metro. Gov't of Nashville & Davidson Cnty.**, 340 S.W.3d 352, 371 (Tenn. 2011) (holding that the plaintiff committed the intentional tort of assault when, even though engaged in horseplay, the defendant "intended to frighten" the plaintiff). In contrast, "[t]his Court has defined the tort of battery as an intentional act that causes an unpermitted, harmful or offensive bodily contact." **Spearman v. Shelby Cnty. Bd. of Educ.**, 637 S.W.3d 719, 734 (Tenn. Ct. App. 2021)

- 5 -

(internal quotations omitted) (quoting *Lacy v. Hallmark Volkswagen Inc. of Rivergate*, No. M2016-02366-COA-R3-CV, 2017 WL 2929502, at \*4 (Tenn. Ct. App. July 10, 2017)). What is identical, however, among the two torts is the element of some form of intentionality. Thus, while assault and battery have differing elements, if Appellants fail to establish intentional conduct, both claims must fail.

Beginning with the battery claim, the trial court's grant of summary judgment rested on its determination that Coach Root did not intend to cause Tyler any harm. On appeal, the parties disagree as to whether this conclusion can be drawn from the undisputed facts in the record. Coach Root asserts that the video evidence presents undisputed proof that he did not intend to harm Tyler. Appellants assert that to draw such a conclusion requires a weighing of the evidence that is inappropriate at the summary judgment stage of litigation. Respectfully, both the parties and the trial court miss the mark as to what is required by the intent element of battery under Tennessee law. Specifically, Appellants were not required to prove that Coach Root intended to cause harm to Tyler, but only that Coach Root intended to do the act that caused unpermitted contact with Tyler that resulted in harm or offense. *See Stafford v. Jackson County*, No. M2016-01883-COA-R3-CV, 2017 WL 3332268, at \*5 (Tenn. Ct. App. Aug. 4, 2017) ("[A] battery claim requires proof that the defendant intentionally committed an act that resulted in a harmful or offensive contact with the plaintiff." (citing *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989) (defining a battery as "an unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant"))). In other words, "[t]he intent required for a battery is not an intent to cause harm. It is an *intent to do the act* that causes the harm." *Lacy*, 2017 WL 2929502, at \*4 n.5 (emphasis added) (quoting 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civ. 8.02 (2014)); *cf.* Nancy J. Moore, *Intent and Consent in the Tort of Battery: Confusion and Controversy*, 61 Am. U. L. Rev. 1585, 1588 (2012) (comparing "single intent" definitions of battery, like that in Tennessee, requiring only "that the defendant intends a bodily contact that turns out to be either harmful or offensive" to "dual intent" definitions that require "both intent to cause a bodily contact and intent to cause either harm or offense"). So whether Coach Root intended to cause Tyler harm is immaterial, as Coach Root has never asserted that he did not intend to make contact with Tyler.[3] Indeed, the video footage in the record clearly shows that Coach Root voluntarily made contact with Tyler. And Coach Root essentially admits that he intended contact with Tyler, but only in an effort to protect his players. So then, in the absence of any demonstrated defenses, discussed *infra*, Coach Root failed to negate the intent element of Appellants' battery claim and the trial court erred in dismissing the claim on this basis.

As to the assault claim, the trial court similarly held that Appellants failed to

---

[3] As an example, a defendant does not have the necessary intent to establish a battery when "a third person takes hold of the defendant's hand and with it slaps another's face[.]" *Restatement (Second) of Torts* § 18. In that case, the defendant did not intend to make contact with the other person. *Id.*

establish that Coach Root intended to cause Tyler an apprehension of harm. Coach Root contends that this ruling was correct in light of the undisputed facts, pointing in particular to his deposition testimony and the various video recordings of the incident that are in the record. Coach Root also focuses on the agreed fact that he did not punch Tyler or hit Tyler in the face, as well as Tyler's admission that he initiated the altercation with the Adamsville player and was attempting to re-engage that player prior to the contact with Coach Root. Coach Root insists that these facts prove that his intent was only to protect himself and his player from Tyler's incoming punch.

On the other hand, Appellants argue that the reasonable inferences we must draw in their favor indicate that Coach Root intended to cause a fear of harm in Tyler. They explain that Coach Root "charging headlong" into the fray directly toward Tyler with both arms raised indicates a singling out of Tyler beyond that meant to protect the Adamsville player. Appellants also argue that this behavior by an adult can be reasonably inferred as intended to create an apprehension of harm in a high school student. Appellants compare the level of force used by Coach Root to move his player to that used to move Tyler, arguing that a reasonable implication of this difference is that Coach Root had the ability to use less force but intentionally used more violent treatment with Tyler.

It is not for us to determine which of these interpretations is correct. Instead, in considering whether Coach Root has met his burden at the summary judgment stage, we must determine whether a genuine issue remains as to the material fact of his intent. Only if, after considering the evidence in the light most favorable to Appellants, discarding all countervailing evidence, and drawing all reasonable inferences in favor of Appellants, a reasonable jury could only come to one conclusion is summary judgment appropriate. *Byrd*, 847 S.W.2d at 211; *Brooks Cotton Co.*, 381 S.W.3d at 429 ("Courts should grant summary judgment 'only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion.'" (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)). Thus, the material fact of whether Coach Root intended to cause Tyler an apprehension of imminent harm still remains in dispute; a reasonable jury could find support for either interpretation in the record.

The video footage in the record confirms many of the facts agreed to by the parties. One video[4] shows Tyler punching an Adamsville player, who was himself attempting to hit Scotts Hill students. As the Adamsville player stands back up with the assistance of his teammate and Tyler begins to swing again, Coach Root enters the frame, putting both arms between Tyler and the Adamsville player. After Tyler's swing passes both Coach Root and the Adamsville player, Coach Root's left forearm connects with Tyler's shoulder at the same time as his right arm straightens to edge the Adamsville player out of the frame. As Coach Root pushes his left arm into Tyler, Tyler falls toward the floor at the foot of the

---

[4] This video also appears in a slowed-down and zoomed-in version.

Scotts Hill bleachers, bringing his arms down in front of him. At this point, one Scotts Hill player walks toward Coach Root while another player backs toward the Scotts Hill sidelines with his arms wide and fingers spread, an adult from the Scotts Hill sidelines steps between Coach Root and Tyler with his arm extended, and Coach Root begins backing away, also with his arms wide and fingers spread. A video from a different angle shows another adult come up to Coach Root, grab his arm, and point away from the continuing altercation; a third adult comes and places his hand on Coach Root's chest, before all three walk away and out of the frame. Another video shows Tyler standing up and talking with Ms. Kelley before both leave the frame. However, what these videos do not show with any objective clarity is the material fact of what Coach Root intended, beyond merely making physical contact with Tyler.

There have been several cases before this Court where video evidence has been determinative in resolving factual disputes at the summary judgment stage. For example, in *Keirsey v. K-VA-T Food Stores*, the parties disagreed as to whether the defendant store had properly warned the plaintiff of the dangerous condition created by a wet floor that led to her fall. No. E2018-01213-COA-R3-CV, 2019 WL 1301758, at *2 (Tenn. Ct. App. Mar. 20, 2019). After reviewing a surveillance video of the incident, the trial court determined that, because a wet floor sign and a mat were clearly visible in the video prior to the fall, no disputed facts remained to establish the store's negligence. *Id.* at *3. We affirmed on appeal, noting that the "video evidence conclusively establishes that defendant provided a warning to plaintiff of ongoing wet conditions in the entryway. No reasonable factfinder could conclude defendant failed to warn plaintiff of hazardous conditions." *Id.* at *6.

Similarly, the question in *Jones v. Publix Supermarket* required determination of whether the defendant store had constructive knowledge of liquid on the floor prior to the plaintiff's slip and fall. No. M2018-01672-COA-R3-CV, 2019 WL 2404975, at *3–4 (Tenn. Ct. App. June 7, 2019). The defendant relied on video footage of the area to establish that the liquid had been left on the floor mere moments before the plaintiff's fall and the trial court found that this negated an essential element of her negligence claim. *Id.* This Court agreed, noting that, based on the timing of events in the video, the defendant had affirmatively negated the essential element of a breach of its duty to the plaintiff, because there were "no other alleged facts that support a reasonable conclusion that [the defendant] caused the unsafe condition or had reason to know about it." *Id.* at *7.

The difference between these cases and the one before us involves the facts the videos were used to establish. Whether a mat or sign were present and how long a liquid was on the floor are questions of objective fact; the answer to these questions can be readily confirmed through video footage. *See Objective*, *Black's Law Dictionary* 1178 (9th ed. 2009) (defined in relevant part as "[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions"). The question here is instead one of Coach Root's state of mind and the intention behind his

intervention in the altercation between Tyler and the Adamsville player. In this case, we are unable to conclude that the video footage provides only one clear answer to these questions.[5] And "Tennessee courts have cautioned that when the dispositive issue requires a determination of state of mind, 'the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.'" *TWB Architects, Inc.*, 578 S.W.3d at 892 (quoting *McDowell v. Moore*, 863 S.W.2d 418, 421 (Tenn. Ct. App. 1992)); *see also Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936 (Tenn. Ct. App. 1984) (noting that courts construing the federal summary judgment rules "consistently hold that summary judgments should not be granted in cases where the outcome hinges squarely upon the state of mind, intent, or credibility of the witnesses" (citations omitted)).

Additionally, Appellants argue that any reliance on Coach Root's own testimony as evidence of his intent is improper, as it serves only as a "conclusory assertion" that he is entitled to summary judgment. *See Rye*, 477 S.W.3d at 264 ("We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis."). To accept this testimony as conclusive proof of Coach Root's intent would require, therefore, improperly weighing the evidence in favor of the moving party. *See TWB Architects, Inc.*, 578 S.W.3d at 892 (citing *HCA, Inc. v. Am. Prot. Ins. Co.*, 174 S.W.3d 184, 193 (Tenn. Ct. App. 2005) (noting that summary judgment "is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense" because determining a state of mind "depends entirely upon the conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving"); *Anderson v. Mason*, 141 S.W.3d 634, 637 (Tenn. Ct. App. 2003) ("Even if [the defendant's] testimony was uncontradicted and unimpeached, her interest in the outcome of the case alone is sufficient to create an issue of fact for the jury.")). Appellants emphasize that their description of the altercation is similarly supported by Tyler's deposition testimony. Moreover, both parties argue that the video footage supports their interpretation of Coach Root's intent. Accordingly, there remains a genuine dispute as to this material fact. Simply put, differing conclusions may be drawn from the evidence in the record and summary judgment as to Coach Root's intent is not proper at this juncture.

---

[5] This is not to say questions of intent are never amenable to resolution at the summary judgment stage. Instead, like questions of comparative fault, an issue "typically a question for the trier of fact," summary judgment on this issue may be granted "where reasonable minds could only" reach one conclusion. *Hall v. Owens*, No. W2014-02214-COA-R3-CV, 2015 WL 7354384, at *4 (Tenn. Ct. App. Nov. 20, 2015) (internal quotation marks and citation omitted) (relying on video footage of a car accident to conclude that no reasonable jury could find the plaintiff less than fifty percent at fault, such that the defendant was entitled to summary judgment). In this case, however, we simply hold that, giving Appellants all required inferences in their favor, reasonable minds could disagree as to Coach Root's intent such that summary judgment was inappropriate.

Regardless of his claimed lack of intent to cause Tyler apprehension of harm, Coach Root argues that his statutory right to protect his player from Tyler's incoming punch serves as a defense to both the assault and the battery claims. Indeed, Tennessee Code Annotated section 38-2-101 states that "[l]awful resistance to the commission of a public offense may be made by the party about to be injured, or by others." A third party to the offense, "in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense." Tenn. Code Ann. § 38-2-103. Coach Root asserts that his involvement in the altercation was in line with his duty to protect his players. The trial court found that Coach Root "raising his arm to protect his player and himself from being punched resulted in reasonable contact necessary to accomplish a legitimate, official purpose of a head coach protecting his player and himself from imminent harm."

Appellants disagree, highlighting that Coach Root was able to "gently mov[e] his player out of the way" such that his "violently striking" Tyler instead contradicts Coach Root's assertion that he was de-escalating the fight between the two children. Again, Appellants argue, relying on Coach Root's interpretation of the altercation—namely, that his contact with Tyler was a reasonable amount of force, meant only to prevent the offense against his player—would require raising inferences in favor of the moving party. It can certainly also be argued that the fact that three adults intervened after Coach Root's contact with Tyler contradicts the finding that his behavior was reasonable. So then, a dispute similarly remains as to the reasonableness of Coach Root's behavior in relation to Tyler's attack against the Adamsville player.[6]

It is clear that the parties "disagree about the inferences and conclusions to be drawn from the facts," and this Court is "ill-equipped to weigh the evidence or to substitute its judgment for that of the trier of fact." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 87 (Tenn. 2010)). There are facts in the record to both support and undermine a conclusion that Coach Root did not intend to create an apprehension of harm in Tyler, and that his conduct was reasonable in relation to the threat Tyler posed to the Adamsville player. *See Brooks Cotton Co.*, 381 S.W.3d at 429. Therefore, we conclude that the existence of genuine issues involving the inferences to be drawn from the facts in this case should have

---

[6] Coach Root also asserts that by "willfully participating in an altercation . . . Tyler implicitly consented to incidental contact by persons, including [Coach] Root, attempting to protect themselves or others." Although this argument was raised in Coach Root's motion for summary judgment, the trial court did not specifically address this issue in its order. It is true that this Court may sometimes affirm a trial court's summary judgment ruling on a different basis than that relied upon by the trial court. *See Bobo v. City of Jackson*, 511 S.W.3d 14, 26 n.14 (Tenn. Ct. App. 2015) ("[W]e are entitled . . . to affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial court's decision."). We note, however, that as an appellate court, our jurisdiction is appellate only and "we are constrained to only review those issues that have been decided by the trial court in the first instance." *Whalum v. Shelby Cnty. Election Comm'n*, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *3 (Tenn. Ct. App. Sept. 30, 2014) (citing *Reid v. Reid*, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012)). So we decline to address this issue on appeal.

prevented the trial court from granting summary judgment as to the claims of assault and battery against Coach Root.

*2. IIED and Under Section 1983*

The trial court dismissed the remaining claims against Coach Root based on findings regarding the nature of the contact, ruling that Coach Root's behavior was neither outrageous enough to support a claim for IIED nor sufficiently offensive to support a claim under section 1983. To support a claim for IIED, "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)).

Section 1983 provides, as relevant here, that a person acting under the color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" Appellants assert that Coach Root, acting under color of law based on his employment by a public agency, deprived Tyler of his Fourteenth Amendment right to bodily integrity. We address Appellants' claim under the well-established "shocks the conscience" standard: "to raise a material issue of fact as to whether [Coach Root] violated [Tyler's] right[] to personal security and freedom from abuse at the hands of state officials, Appellants must identify conduct that is 'so brutal, demeaning, and harmful as literally to shock the conscience.'" *Domingo v. Kowalski*, 810 F.3d 403, 410 (6th Cir. 2016) (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)); *see also Webb*, 828 F.2d at 1158 (explaining the test as "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience" (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980))). Accordingly, although the IIED claim relates to Ms. Kelley's alleged injuries and the section 1983 claim relates to Tyler's, both claims require proof, to varying degrees, of the unreasonableness of Coach Root's conduct.

The trial court found that Coach Root's behavior did not establish a claim under section 1983 by "shock[ing] the conscience," nor did it "come close to the requisite outrageous conduct necessary to set forth an [IIED] claim." The trial court compared the facts in this case to those in *Lillard v. Shelby County Board of Education* to explain that Coach Root's conduct did not rise to the level of shocking the conscience. 76 F.3d 716 (6th

Cir. 1996). There, a public-school teacher detained a student after class, verbally abused her, and then "held her chin with one hand and slapped her across the face . . . 'perhaps harder than he meant [to.]'" *Id.* at 719. In granting the defendant's motion to dismiss the section 1983 claim, the district court found that the single slap "did not rise to a level of actions that were 'shocking to the conscience,' and thus did not state [a] constitutional violation[.]" *Id.* at 721. The Sixth Circuit found it to be "simply inconceivable that a single slap could shock the conscience." *Id.* at 726. Yes, the court found, the conduct was "careless and unwise" but it fell "far short of 'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process." *Id.*

In relation to their section 1983 claim, Appellants argue that to compare Coach Root's actions to those in *Lillard* would require viewing the video footage in the light most favorable to the moving party and drawing inferences in his favor. Respectfully, Appellants' argument as to this issue is deficient. Specifically, Appellants merely assert that the questions of Coach Root's intention and whether his conduct shocked the conscience should be resolved by the jury. And as to their IIED claim, Appellants simply direct us to their earlier argument rather than present any specific argument or citations.[7] However, Appellants do not cite any cases more closely analogous to the circumstances here. Nor do they provide any caselaw to suggest that a trial court cannot make the determination of whether conduct is "outrageous" or "shocks the conscience" at the summary judgment stage. Instead, our research has revealed several cases in which a trial court's decision to dismiss a claim under similar circumstances was affirmed on appeal, including the case cited by the trial court in its order of dismissal. *See Lillard*, 76 F.3d at 721 (affirming disposal of a section 1983 claim pursuant to a motion to dismiss); *Domingo*, 810 F.3d at 409 (affirming disposal of a section 1983 claim pursuant to a motion for summary judgment); *Bain*, 936 S.W.2d at 623 (affirming disposal by summary judgment of IIED claim as not outrageous); *Runions v. Tenn. State Univ.*, No. M2008-01574-COA-R3-CV, 2009 WL 1939816 (Tenn. Ct. App. July 6, 2009) (same). Appellants make no effort to address the trial court's reasoning or the case it relied upon in any meaningful way. We decline to do Appellants' work for them in this regard. *See Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). The trial court's grant of summary judgment as to Appellants' section 1983 and IIED claims against Coach Root is

---

[7] The totality of Appellants' argument regarding their IIED claim is as follows: "The [trial court] granted summary judgment on Lisa Kelley's [IIED] claims solely on the basis of the severity of [Coach] Root's conduct. For the reasons stated above, this required a drawing of inferences in [Coach] Root's favor inappropriate at the summary judgment stage." (Record citation omitted). Appellants' arguments as to both the assault and battery claim and the section 1983 claim against Coach Root appear "above" the section dedicated to their IIED claim.

therefore affirmed.

## B. Claims Against the Board

### 1. Under Section 1983

Appellants have stated two claims against the Board under section 1983: one for the assault and battery allegedly committed by Coach Root, and one for the Board's alleged failure to train and supervise Coach Root. The trial court found that the first of these claims must fail as a matter of law in part because the Board could not be held vicariously liable under section 1983 for any assault and battery committed by Coach Root. Appellants do not address this aspect of the order granting summary judgment in their appellate brief, so this issue is waived. *See Adkins v. Bluegrass Ests., Inc.*, 360 S.W.3d 404, 415 (Tenn. Ct. App. 2011) ("If a party does not adequately brief an issue on appeal, the issue is waived." (citing *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)). Moreover, it is well settled that "a local government may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *see also Jackson v. Thomas*, No. M2010-01242-COA-R3-CV, 2011 WL 1049804, at *4 (Tenn. Ct. App. Mar. 23, 2011) ("There is no respondeat superior liability under § 1983, therefore, a county cannot be liable for an injury inflicted solely by its employees or agents." (citing *Lee v. Knox Cnty. Sheriff's Off.*, No.: 3:05-CV-571, 2006 WL 8443012, *6 (E.D. Tenn. Oct. 31, 2006))). Accordingly, we affirm the trial court's grant of summary judgment as to the assault and battery claim against the Board under section 1983.

As to Appellants' second claim, there is no dispute that "a governmental entity can be held liable under [section] 1983 for its failure to properly train and supervise its employees." *Cochran v. Town of Jonesborough*, 586 S.W.3d 909, 918 (Tenn. Ct. App. 2019) (quoting *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *46, *51 (E.D. Tenn. Jan. 30, 2004)). However, "a municipality can be liable under [section] 1983 only if there is some underlying constitutional violation for which it could be held responsible." *Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 856 (6th Cir. 2016) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 471 (6th Cir. 2006) (noting that "[w]here . . . a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm" (citation omitted))). "Absent a violation of [the plaintiff's] constitutional rights by a municipal employee, [the plaintiff] cannot state a claim against the municipality." *Hubbard v. Gross*, 199 F. App'x 433, 442 (6th Cir. 2006). Thus, to hold the Board liable under section 1983 for this claim, Appellants are required to establish two essential elements: (1) that the Board negligently trained or supervised Coach Root; and (2) that this inadequate training or supervision caused a violation of Tyler's rights. *Cf. Gambrel v. Knox County*, 25 F.4th 391, 408 (6th Cir. 2022) ("*First*, a municipality must have acted with 'deliberate

indifference' to the fact that its inadequate training or supervision would lead its agents to violate constitutional rights. . . . *Second*, a municipality's improper training or supervision must have 'actually caused' the plaintiff's injury." (first quoting *Brown*, 520 U.S. at 405; and then quoting *Connick v. Thompson*, 563 U.S. 51, 70, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011))).

As discussed above, Appellants have waived their argument regarding the trial court's grant of summary judgment as to their section 1983 claim against Coach Root, which necessarily included a determination that no reasonable jury could conclude that Coach Root violated Tyler's constitutional rights. Consequently, because there is no underlying constitutional violation, the Board cannot be held liable for its allegedly inadequate training or supervision. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (where plaintiff sought to hold city liable for officer's use of excessive force, finding no cases to "authorize[] the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"); *Gomez v. City of Memphis*, No. 21-5473, 2023 WL 7287100, at *7 (6th Cir. Aug. 4, 2023) (affirming summary judgment on inadequate training claim against county where trial court found no constitutional violation by county actor, noting that "the precondition for municipal liability is an underlying constitutional violation"); *Griffith v. Franklin County*, 975 F.3d 554, 581 (6th Cir. 2020) (finding that "[t]he County cannot be liable unless [the plaintiff] establishes an underlying constitutional violation" where plaintiff sought to hold county liable for failure to train and policy of deliberate indifference); *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019) (noting that "where there has been no showing of individual constitutional violations . . . there can be no municipal liability," relative to a claim of inadequate training by the city after plaintiff failed to establish that city police officers violated the Fourth Amendment); *see also Beneficial Tenn., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004-01071-COA-R3-CV, 2006 WL 568250, at *3 (Tenn. Ct. App. Mar. 8, 2006) ("A municipality is liable under Section 1983 *only if plaintiff's constitutional rights are deprived* because of a governmental policy, procedure, or custom." (emphasis added)). The trial court's grant of summary judgment as to the section 1983 failure to train and supervise claim against the Board is accordingly affirmed.

### 2. Assault and Battery

Appellants' final claim against the Board is vicarious liability for the alleged assault and battery committed by Coach Root. The Board relies on the GTLA in arguing that it cannot be held liable for Coach Root's alleged misconduct. The GTLA provides, in relevant part, that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a); *see also Limbaugh v. Coffee Med. Ctr.*,

59 S.W.3d 73, 79 (Tenn. 2001) ("[T]he General Assembly enacted the Tennessee Governmental Tort Liability Act . . . to codify the general common law rule that all governmental entities shall be immune from suit[.]"). The GTLA also provides, however, that removal of governmental immunity is appropriate under certain circumstances. For example, Tennessee Code Annotated section 29-20-205 provides that immunity from suit "is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment[.]" Thus, a plaintiff who has allegedly suffered an injury at the hands of a negligent government employee acting in the scope of his or her employment may bring suit against the governmental entity.

Nonetheless, section 29-20-205 goes on to provide for specific circumstances under which immunity is not removed. As relevant to this case, section 29-20-205(2) explains that immunity for governmental negligence is preserved where "the injury arises out of: false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights[.]" Tenn. Code Ann. § 29-20-205(2). Assault and battery are notably absent from this list of intentional torts for which an entity remains immune. *See Limbaugh*, 59 S.W.3d at 84 (finding it "noteworthy that the legislature excluded the two intentional torts most likely to give rise to injury" and declining to expand the intentional torts exception to encompass assault and battery).

The framing of section 29-20-205 is perhaps not the epitome of clarity, but as relevant to this case, a governmental entity *may not* be held vicariously liable for an assault and battery committed by its employee, as the general removal of immunity under the section addresses only negligent acts or omissions. But because assault and battery are not included within those intentional torts for which immunity is expressly retained within section 29-20-205(2), a governmental entity *may* be liable for an injury caused by its employee's assault and battery *if* there is also a showing of some negligence by the entity itself. *See Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 368 (Tenn. 2011) ("Since 2001, the Court of Appeals has correctly interpreted *Limbaugh* to mean that 'the GTLA does not allow plaintiffs to hold governmental entities vicariously liable for intentional torts not exempted under section 29-20-205(2), but rather requires a direct showing [of] negligence on the part of the governmental entity.'" (quoting *Pendleton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004-01910-COA-R3-CV, 2005 WL 2138240, at *3 (Tenn. Ct. App. Sept. 1, 2005))). Therefore, Appellants argue, the Board may be held liable for the assault and battery allegedly committed by Coach Root upon a showing of the Board's negligent failure to train and supervise.

The Board emphasizes that here, however, another aspect of section 29-20-205(2) allows the Board to retain immunity from this allegation of negligence. Although the intentional torts exception does not include assault and battery, it does include civil rights

violations. Consequently, this Court has previously held that where the "underlying acts which [a plaintiff] alleges to be negligent are . . . predicated on intentional tortious conduct involving the violation of [the plaintiff's] civil rights" by government employees, the "'civil rights' exception in [section] 29-20-205(2)" is applicable. *Jackson*, 2011 WL 1049804, at *7 (quoting *Campbell v. Anderson County*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010)). Thus, "even where a complaint couches the claims contained therein as negligent training and supervision claims, if the gravamen of the claim involves a violation of civil rights, then immunity is preserved." *Merolla v. Wilson County*, No. M2018-00919-COA-R3-CV, 2019 WL 1934829, at *4 (Tenn. Ct. App. May 1, 2019) (citing *Cochran*, 586 S.W.3d at 919); *see also Jackson*, 2011 WL 1049804, at *6 (noting that the term "civil rights" in section 29-20-205(2) has been construed "as including claims arising under the federal civil rights laws and the U.S. Constitution" (citation omitted)).

From our review, the thrust of Appellants' claims against the Board is that its inadequate training led to a violation of Tyler's constitutional right to bodily integrity by Coach Root. To be sure, in their response to the Board's motion to dismiss and subsequent motion for summary judgment, Appellants conceded that the GTLA provided immunity for their claims of negligence against the Board on the basis of the "civil rights" exception. And while this count of the complaint involves only allegations of negligent training and supervision related to Coach Root's assault and battery, it arose from the same set of facts upon which Appellants alleged that Tyler's constitutional rights had been violated within their section 1983 claims. Thus, this claim falls within the ambit of "civil rights" under section 29-20-205(2). *See Cochran*, 586 S.W.3d at 920 (exception applied to negligent training and supervision claim based on facts underlying section 1983 claim); *Merolla*, 2019 WL 1934829, at *6 (exception applied to negligence claim based on facts underlying section 1983 claim); *Lankford v. City of Hendersonville*, No. M2016-02041-COA-R3-CV, 2018 WL 1559971, at *10 (Tenn. Ct. App. Mar. 29, 2018) (same); *Jackson*, 2011 WL 1049804, at *7 (exception applied to negligent supervision and negligent infliction of emotional distress claims based on facts underlying section 1983 claim); *see also Howard v. Knox County*, No. 3:15-CV-6-TAV-CCS, 2016 WL 9455169, at *11 (E.D. Tenn. Sept. 7, 2016) (exception applied to negligent hiring and training claim based on facts underlying section 1983 claim,) *aff'd*, 695 F. App'x 107 (6th Cir. 2017); *Johnson v. City of Memphis*, 617 F.3d 864 (6th Cir. 2010) (exception applied to negligence claim based on facts underlying section 1983 claim); *Partee v. City of Memphis*, 449 F. App'x 444, 448 (6th Cir. 2011) (same, but not addressing whether same facts underlaid separate negligent hiring claim for exception to apply because jury found no underlying constitutional violation).

That Appellants were not successful on their civil rights claims does not impact the Board's retention of immunity. "Nothing in the language of section 29-20-205(2) indicates that there must be an express finding that a civil rights violation occurred in order for the exception to apply." *Cochran*, 586 S.W.3d at 920 (finding no "indicat[ion] [in the cases it

cited] that section 29-20-205(2) requires the claimant to be successful in his or her civil rights claim in order for the civil rights exception to apply to corresponding state law claims"). Instead, the immunity offered by section 29-20-205 is broad, preserving immunity for negligence claims so long as the "injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2). Importantly, our holding today is in keeping with the well-established principle that "statutes permitting suits against the State must be strictly construed." *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809–10 (Tenn. 2015); *see also Limbaugh*, 59 S.W.3d at 83 ("[A]s the legislature created [the GTLA] in derogation of the common law . . . the Act must be strictly construed.").

Moreover, the trial court provided three reasons for its dismissal of the assault and battery claim against the Board: (1) that a governmental entity cannot be held vicariously liable for an assault and battery committed by its employee; (2) that no assault and battery was committed by Coach Root; and (3) that Appellants had previously conceded that they were not entitled to bring a negligence action against the Board. This concession was made pursuant to the Board's motion to dismiss wherein it relied upon the "civil rights" exception to section 29-20-205 in arguing that its immunity was preserved. Yet, in their brief, Appellants focus on the fact that the "intentional torts" exception does not include assault and battery, without addressing that the exception does include injuries involving violations of civil rights. Nor do Appellants respond to the Board's assertion that it retains immunity under the "civil rights" exception for the negligence element necessary to hold it liable for the assault and battery in their reply brief. Generally, when an alternative ground for a trial court's ruling is not addressed on appeal, the trial court's decision must be affirmed. *Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *8 (Tenn. Ct. App. Aug. 6, 2018) ("Because the individual defendants . . . failed to challenge one of the alternative grounds for denying the motion to dismiss for lack of personal jurisdiction, the trial court's decision must be affirmed." (citing *Duckworth Pathology Grp., Inc. v. Reg'l Med. Ctr. at Memphis*, No. W2012-02607-COA-R3-CV, 2014 WL 1514602 (Tenn. Ct. App. Apr. 17, 2014))). We therefore conclude that the Board had immunity from suit under the civil rights exception to the GTLA, and the trial court's grant of summary judgment is affirmed as to the assault and battery claim. The dismissal of Appellants' claim for punitive damages as to the assault and battery claim is also affirmed.

## IV. CONCLUSION

The judgment of the McNairy County Circuit Court is reversed in part and affirmed in part, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellants Lisa Kelley and Tyler Kelley, as represented by Ms. Kelley as next friend in this lawsuit, and one-half to Appellee Nathaniel Root, for which execution may issue if necessary.

_s/ J. Steven Stafford_

J. STEVEN STAFFORD, JUDGE